Statement.
In this case, the relator, C.W. Reichert, made an application for an alternative writ of mandamus upon an affidavit made and executed by himself. The affidavit in substance sets forth that Robert Byrne is, and at all times mentioned in the affidavit was, the secretary of state of the state of North Dakota, he being named as respondent herein. The affidavit further sets forth the duties of the secretary of state in reference to the preparing and causing to be printed the official ballots to be used at the general election to fall on the 2nd day of November, this year. The affidavit further sets out that the relator Reichert is a member of and affiliates with a political organization in this state known as the Farmer Labor Party, and was a candidate of that political organization at the primary election held on June 30th, this year, for nomination as the candidate of that party for the office of congressman of the second congressional district. The affidavit further sets out that within the time limited by law for filing petitions to have the name of prospective candidates placed upon the primary ballot to be voted on at the primary election on the 30th day of June, 1926, no person filed any petition to have his name placed on said primary ballot as a candidate of said Farmer Labor party for congressman or representative in the House of Representatives of the United States, for the second congressional district of the state of North Dakota. He further sets forth that, after the time for filing petitions for nominations had expired, but more than twenty-five days before the said primary election, he, Reichert, the relator, filed with the respondent, as secretary of state aforesaid, the affidavit and application of five qualified voters in the second congressional district of the state of North Dakota, according to § 855 of the Compiled Laws of North Dakota for the year 1913, requesting that the name of the relator, Reichert, be printed on the primary election ballots of the *Page 761 
Farmer Labor party, for the office of Congressman of the second congressional district of the state of North Dakota, to be voted on at said primary election held on the 30th day of June, 1926, upon which affidavit and application was endorsed the written consent of relator to be nominated as the candidate of said Farmer Labor party for said office. That at the time of the filing of said affidavit and application by five qualified electors a vacancy existed in the primary election ballot of said Farmer Labor party by reason of no petition having been filed by any one as a candidate for nomination as congressman of the second congressional district of the state of North Dakota by the said Farmer Labor party. He further sets forth that the respondent Byrne, as secretary of state, caused the name of the relator, Reichert, to be printed on the primary election ballot as a candidate of the Farmer Labor party, and said primary election ballots, with the name of said relator printed thereon, as a candidate of the Farmer Labor party, were used and voted in all of the voting precincts of the second congressional district of the state of North Dakota at the primary election held on the 30th day of June, 1926. Then he further sets out that, at the primary election in the second congressional district, he received twenty-six votes for the nomination as a candidate for the Farmer Labor party for Congressman of that district, and that there were cast for him for said office twenty-six votes, and no other ballots were cast for any other person for the nomination by the said Farmer Labor Party to the said office. That the respondent Byrne, secretary of state, refuses to print the name of the relator, Reichert, on the official ballots to be used in the Second congressional district of the state of North Dakota at the general election to be held in the state of North Dakota on the 2nd day of November, 1926, and refuses to certify to the county auditors of the various counties comprising the second congressional district, state of North Dakota, the name of relator, Reichert, as the nominee of said Farmer Labor party of said second congressional district, and that the respondent, Byrne, has announced his intention to omit the name of the relator on the official ballots printed, to be used in the second congressional district at the general election, and will, unless directed by order of this court to print the name of the relator on the official ballots to be used at the general election to be held on the 2nd day of November, 1926, omit *Page 762 
the name of the relator from said ballots, and will refuse to print the name of relator on the ballots, as a candidate of said Farmer Labor party for congressman of said district. That this is a matter affecting the rights, privileges and interests of a large number of electors of the state of North Dakota, and relator has no other plain, speedy or adequate remedy at law to compel respondent to cause the name of relator to be printed on the official ballots to be used in said second congressional district at the general election, to be held on the 2nd day of November, 1926, than a writ of mandamus issued out of this court, compelling the respondent Byrne to print the name of the relator, Reichert, on said official ballots to be used in said congressional district.
Then relator prays that this court assume original jurisdiction in this matter and issue an alternative writ of mandamus, directing the respondent Byrne, as secretary of state, to cause to be printed on the official ballots to be used in the second congressional district in the state of North Dakota, at the general election to be held on the 2nd day of November, 1926, in the state of North Dakota, the name of the relator, C.W. Reichert, as a candidate of the Farmer Labor party, for a member of the House of Representatives of the United States, commonly called a member of Congress, from the said second congressional district, or show cause before this court, in the court rooms of the said court, in the city of Bismarck, county of Burleigh, state of North Dakota, at a time and place to be fixed by the court, why he refuses to do so.
Upon the affidavit of the relator, this court issued an alternative writ of mandamus, directing in substance the said secretary of state to print the name of the relator and certify the same, as prayed for, or in the alternative to show cause before this court, at the court rooms thereof, in the city of Bismarck, county of Burleigh and state of North Dakota, on the 11th day of September, 1926, why the respondent Byrne refuses to cause the name of said relator to be printed upon said official ballots as the candidate of said party for said office. Relator appeared and argued the matter on the 11th day of September, aforesaid, through his attorneys, Messrs. Langer Nuchols, and the respondent, Byrne, appeared and argued a demurrer and motion to quash, through George F. Shafer, Esq., Attorney General of the state of North Dakota, such *Page 763 
demurrer and motion to quash having heretofore been filed as a part of the records herein. The following stipulation was prepared, signed and filed by the attorneys for the relator and the attorney for respondent, in reference to the matter at issue herein, and is in the following language:
"It is hereby stipulated, by and between the parties to the above entitled action by their respective counsel, that at the last general election held in the state of North Dakota, in November 1924, there was no candidate of the Farmer Labor party for the office of member of Congress, in and for the second congressional district of said state; and that at said general election, there were no votes cast for any person or candidate for election to said office, as the candidate of the Farmer Labor party. That the foregoing stipulated facts shall, for the purpose of this action, be taken and considered as if set forth in the relator's affidavit and original application."
This stipulation was made a part of the record herein, and used in the argument and discussion of this matter.
The issue seems to be whether or not the relator should have had at least 300 votes cast for him as a candidate for the office which he seeks, and for which he seeks to be a candidate, or, will the twenty-six votes be sufficient to put the relator in the column of the Farmer Labor Party as a regular candidate, there having been no candidate for that office upon the ballot at the general election held in 1924.
Section 851 of the Compiled Laws for 1913, being the opening section contained in the compilation in reference to primary elections, reads as follows:
"It is the intention of this article to reform the methods by which political parties shall make nominations of candidates for all public offices by popular vote. It shall be liberally construed so that the real will of the electors may not be defeated by any informality or failure to comply with all provisions of law in respect to either the giving of any notice or the conducting of the primary or certify the results thereof."
Section 853, Comp. Laws 1913 (being § 3 of the primary election law) provides:
"Every candidate for United States senator, member of Congress, state officers, shall, not more than sixty days nor less than thirty days *Page 764 
prior to said primary election, present to the secretary of state a petition giving his name, post office address, the title of the office to which he aspires and the party which he represents, containing the names of 3 per cent of the total vote cast for the candidate of the party with which he affiliates, for the same position at the last general election; provided, however, that in no case shall more than three hundred names be required."
Chapter 136, Laws of 1925 (§ 862a, Supplement to the 1913 Compiled Laws of the state of North Dakota) provides:
"At all primary elections no person shall be deemed nominated as candidate for any office unless he receives as many votes as the number of signatures required to be obtained on the petition to have a candidate's name, for such office, placed on the primary ballot."
It will be noted that this section does not refer to party candidates but refers to all candidates whether of a party or not. In other words, in the judgment of this court, it specifically says, by a fair interpretation, that no one shall be considered as having been nominated at a primary election unless he receives as many votes as the number of signatures required to be obtained on his petition to become a candidate for the office when placed on the primary ballot.
No difficulty arises in applying this statute when it involves an office for which the party had a candidate at the preceding general election. In such case, the candidate must receive at least "three per cent of the total vote cast for the candidate of the party with which he affiliates, for the same position at the last general election," unless the three per cent of such vote exceeds 300, in which event 300 votes will be sufficient to bring about a nomination. The difficulty arises in a case like the present one, where the party with which the candidate affiliates had no candidate for the same position at the last general election. In such case there is no basis for the operation of the percentage provision of chapter 136, Laws 1925; for, obviously, if the percentage provision is applicable in such case then only one vote would be sufficient to bring about the nomination of a candidate and, clearly, the legislature did not intend to bring about any such result.
The obvious purpose of § 853, supra, was to preclude any person from becoming a candidate at a primary election, unless there was some public demand for such candidacy — that is, unless there was such *Page 765 
demand that a reasonable number of electors, members of the candidate's party, would sign the nominating petition. It is, we think, clear that the purpose of the legislature in the enactment of § 853, supra, was to preclude candidacies which rested on a petition signed by only one or a very few names; and chapter 136, Laws 1925, was enacted to make the rule in force as to nominating petitions applicable to nominations at a primary election, to the end that nominations might not be made because one or a few scattering votes were cast for some one person as a candidate for some office.
It will be noted that the statutory provisions in question provide two bases for computing the number of names required on a nominating petition, and the number of votes required to be cast at a primary election for any person in order to make him the nominee of a party for a given office: — (1) Three per cent of the total vote cast at the last preceding general election for the candidate of the party with which the candidate affiliates, for the office for which a nomination is sought; and, (2) Three hundred, if such 3 per cent exceeds three hundred. If the "percentage" provision is applicable where there was no candidate at the preceding general election, then a nominating petition signed by one elector would be sufficient; and, if no nominating petition were filed, one vote cast at the primary election would be sufficient to bring about the nomination of the person for whom the vote was cast. In other words, the very condition would be created which the legislature sought to guard against. It is elementary that statutes should be construed so as to carry out the legislative purpose and intent. And while the statutory provisions involved here are not altogether plain, we are of the opinion that when they are all construed together, the legislative purpose manifested thereby is:
(1) That in a case where there was a candidate of the party for a given office, at the preceding general election, the number of signatures required upon the nominating petition and the number of votes required for a nomination, at the succeeding primary election, is three per cent of the total cast for the candidate of the party for the same office, at the last general election; unless such 3 per cent exceeds 300, in which case 300 names signed to a nominating petition or 300 votes cast at the primary election is sufficient.
(2) That in a case where there was no candidate of the party at *Page 766 
the preceding general election, a nominating petition is required to contain at least 300 names; and in order to effectuate a nomination, at the primary election, the candidate must receive at least 300 votes.
In the case of State ex rel. Miller v. Flaherty, 23 N.D. 313, 41 L.R.A.(N.S.) 132, 136 N.W. 76, the court holds specifically that the legislature has a right to require nomination to be made at primary elections by the use of a ballot and, that being so, it has a right to require a minimum number of votes to be cast to effect the nomination when such minimum number of votes is not an unreasonable number, or when they will not cast an unreasonable burden upon any person aspiring to be a candidate for office, or put it out of the reach of the average man, by reason of any exactions of time or money that would tend to make it impossible or highly burdensome for a person of limited means to become a candidate.
The relator in this case has cited the case of State ex rel. Dorval v. Hamilton, 20 N.D. 592, 129 N.W. 916, as a case in point supporting the contention of the relator herein. In the judgment of this court, it does not sustain such contention. In the syllabus of that case and in the decision appears:
"The primary election law of this state, in common with all general laws regulating the elective franchise, is in all its parts within the constitutional requirements that it must be just and reasonable, must have a uniform operation throughout the state, and must bear with substantial equality upon parties, candidates, and all classes of citizens."
A majority of the court are of the opinion that under the pleadings in this case no question is presented as to the constitutionality of chapter 136, Laws of 1925; but the writer, speaking for himself alone, is of the opinion that the construction for which the relator contends would tend to invalidate the statute, rather than render it valid. If the relator could become the regular nominee of the Farmer Labor party, as a candidate for Congress in the second congressional district, where he received only twenty-six votes because of the fact that there was not a candidate of that party for Congress in that district in 1924, the law would bear unequally upon the two parties that have been regularly in existence, the Republican and the Democratic parties, and would favor the Farmer Labor party, because there can be no question under the *Page 767 
conditions obtaining that the Republican and Democratic candidates for Congress in the congressional districts, under the statute, must have at least 300 votes to become a regularly nominated candidate. If, now, the Farmer Labor party could take advantage of its delinquency as to a Congressional candidate in 1924 and use that to the detriment of the other parties in putting forth a candidate at this time, the law in its requirements would not be just and reasonable, nor would it have a uniform operation, or bear with substantial equality upon parties, candidates and all classes of citizens. The opening paragraph of the primary law, as referred to, refers to a reform in the method of nominating candidates for office. If the interpretation that the relator would put upon the statute should be adopted, the intent of the primary law would be defeated, and it would operate, not as a reform but in the direction of political manipulation. Voters of the Farmer Labor party could at the primary neglect their own party and vote as members of other parties, and, perhaps, determine who should be nominated in those other parties by aiding one division or another in another party and thereafter, by the method sought by the relator herein, put up a candidate of their own upon a purely negligible vote and bring into the field a candidate who, so far as the primary election is concerned, had no substantial following. Surely, this was not and is not the intention of the primary law. And, further, if there is a demand for a new party, that demand does not come and is not a bona fide demand when backed up by only twenty-six votes in the primary election in the entire congressional district. It may be a feint, made by a few for their members who have scattered under another banner or other banners in the primary election, for effecting a purpose other than true party nomination, and, if so, that fact should be condemned and should not be permitted to engraft itself upon what appears to be the plain written language of the statute.
The demurrer herein in all things is sustained and the alternative writ is quashed.
CHRISTIANSON, Ch. J., and BURKE, BIRDZELL, and NUESSLE, JJ., concur.
JOHNSON, J., deeming himself disqualified, did not participate; Judge A.T. COLE of the First Judicial District sitting in his stead. *Page 768