O. C. UDIE, W. E. Doty and Julius Meyers, Petitioners, v. ROBERT BYRNE, as Secretary of State, Respondent.

(233 N. W. 648.)

Opinion filed October 24, 1930.

*F. O. Hellstrom,* for petitioners.

*James Morris,* Attorney General, and *Charles Simon,* Assistant Attorney General, for respondent.

PER CURIAM. This is an original application to this court for a writ of mandamus commanding the defendant as Secretary of State to certify the names of O. C. Udic, W. E. Doty and Julius Meyers to the auditor of Burleigh county to be placed in the Democratic column on the general election ballot, as candidates for the offices of representatives from the 27th legislative district.

Laying on one side all procedural questions, all questions as to parties, whether the application for the writ is timely and all questions of a kindred nature, we are agreed that the facts, considered in the

light most favorable to the petitioners, demonstrate that they are not entitled to the relief sought. Such facts are as follows: The democratic party had no candidates for representatives from the 27th legislative district at the general election in 1928; no persons filed nominating petitions asking that their names be placed upon the democratic ballot at the primary election held in June, 1930, and no names were printed upon such ballot. Some of the electors wrote in the names of certain persons as candidates, among others the name of one of the petitioners here; but there is no showing that two of the petitioners here received any votes whatsoever. Nor is there any showing that any person received more than three votes for democratic candidate for representative from the 27th legislative district at the primary election held in June, 1930. No certificates of nomination were issued to any of the persons so voted for. On October 4, 1930, certain persons, claiming to constitute the Democratic county central committee of Burleigh county, met and passed a resolution reciting that vacancies existed on the "democratic ticket for nomination of candidates for the legislature on the democratic ticket in the 27th legislative district of the state of North Dakota;" and such Democratic county central committee thereupon appointed and designated the above named three petitioners as the persons to be placed upon the general election ballot as the democratic candidates for such offices. A certificate signed by the chairman and secretary of such democratic county central committee, certifying that said petitioners had been so named to fill the vacancy upon the ticket, was thereafter presented to the defendant Secretary of State with the request that he certify the names of such persons to the county auditor of Burleigh county as the democratic candidates for representatives from the 27th legislative district; but he has refused to do so.

Some question is raised as to whether the persons who purported to act as such democratic county central committee was in fact a legal committee. The proceeding before us here does not require or justify a decision of this question, and we express no opinion thereon. For the purposes of this case we shall assume that the persons who so acted had power to act as such committee.

Under the laws of this state candidates for public offices of the respective political parties (having a recognized standing as such under the laws of this state) are, or may be, nominated at a primary election.

Comp. Laws 1913, § 851, et seq. A candidate for nomination for a legislative office is required to present a nominating petition to the auditor of the county where such candidate resides. Comp. Laws 1913, § 854. At a primary election the voters, however, are not restricted in their choice of candidates to the persons whose names are so printed upon the primary election ballot. As to each office a blank line is left under the names printed on the ballot and on such blank line a voter may, if he so desires, attach a sticker or write the name of a candidate other than the one whose name is printed on the ballot. Comp. Laws 1913, § 857. And where no candidates have filed nominating petitions the electors may, if they so desire, by means of a sticker or by writing in names, vote for candidates for the respective offices. The legislature has, however, provided that no person shall be deemed nominated at the primary election "as· a candidate for any office unless he receives as many votes as the number of signatures required to be obtained on the petition to have a candidate's name, for such office, placed on the primary ballot." Laws 1925, chap. 136, § 862a. Supplement to the 1913 Compiled Laws.

Section 853, Comp. Laws 1913, provides that "every candidate for United States senator, member of congress, state officers," etc., must file a nominating petition "containing the names of 3 per cent of the total vote cast for the candidate of the party with which he affiliates, for the same position at the last general election; provided, however, that in no case shall more than three hundred names be required."

Section 854, Comp. Laws 1913, provides that a candidate for a legislative office must file a petition "containing the names of 5 per cent of the total vote cast for the candidate by the party he represents, for the same position at the last general election; . . . provided, however, that in no case shall there be more than two hundred names."

In Reichert v. Byrne, 54 N. D. 759, 210 N. W. 640, the question was presented what number of votes would be required to secure the nomination of a candidate for member of Congress, at a primary election in a case where there had been no candidate of the party for such office at the preceding general election. In determining that question this court said:

"The obvious purpose of section 853, supra, was to preclude any person from becoming a candidate at a primary election, unless there

was some public demand for such candidacy—that is, unless there was such demand that a reasonable number of electors, members of the candidate's party, would sign the nominating petition. It is, we think, clear that the purpose of the legislature in the enactment of § 853, supra, was to preclude candidacies which rested on a petition signed by only one or a very few names; and chapter 136, Laws 1925, was enacted to make the rule in force as to nominating petitions applicable to nominations at a primary election, to the end that nominations might not be made because one or a few scattering votes were cast for some one person as a candidate for some office.

"It will be noted that the statutory provisions in question provide two bases for computing the number of names required on a nominating petition, and the number of votes required to be cast at a primary election for any person in order to make him the nominee of a party for a given office:—(1) Three per cent of the total vote cast at the last preceding general election for the candidate of the party with which the candidate affiliates, for the office for which a nomination is sought; and, (2) three hundred, if such 3 per cent exceeds three hundred. If the 'percentage' provision is applicable where there was no candidate at the preceding general election, then a nominating petition signed by one elector would be sufficient; and, if no nominating petition were filed, one vote cast at the primary election would be sufficient to bring about the nomination of the person for whom the vote was cast. . In other words, the very condition would be created which the legislature sought to guard against. It is elementary that statutes should be construed so as to carry out the legislative purpose and intent. And while the statutory provisions involved here are not altogether plain, we are of the opinion that when they are all construed together, the legislative purpose manifested thereby is:

"(1) That in a case where there was a candidate of the party for a given office, at the preceding general election, the number of signatures required upon the nominating petition and the number of votes required for a nomination, at the succeeding primary election, is three per cent of the total cast for the candidate of the party for the same office, at the last general election; unless such 3 per cent exceeds 300, in which case 300 names signed to a nominating petition or 300 votes cast at the primary election is sufficient.

"(2) That in a case where there was no candidate of the party at the preceding general election, a nominating petition is required to contain at least 300 names; and in order to effectuate a nomination, at the primary election, the candidate must receive at least 300 votes."

This language and reasoning is equally applicable to a candidate for a legislative office. Under the express authority of this case, it follows that where the party has no candidate for Member of the House of Representatives of North Dakota at the previous general election, a person, in order to be nominated for such office at the primary election, must receive at least 200 votes. In short, under the primary election laws of this state as supplemented by said chapter 136, Laws 1925, the electors are given the power not only to nominate by nominating petitions, and casting their votes for the candidates so nominated or by writing in the names of others; but they are also given the power, if they see fit so to do, to refrain from nominating, which is precisely what they did in the case at bar.

It is claimed by the petitioners, however, that the failure by the electors to nominate any candidates created vacancies, which the county central committee had authority to fill. This is, of course, contrary to the express provisions of the statute (chapter 136, Laws 1925), which contemplates that the people shall have the power not only to nominate candidates but, shall have the power, if they so desire, to refrain from nominating. It is also contrary to the express holding of this court in State ex rel. Burtness v. Hall, 37 N. D. 259, 163 N. W. 1055. In that case this court said: "The power of party committees to fill a vacancy on the ticket under §§ 977 and 978, Comp. Laws 1913, is only a power to supply a nomination where one has been made but has since become vacant." This language is directly applicable here. In this case no nominations had been made. The electors had refrained from making any. Hence, no situation existed which authorized the Central Committee to fill a vacancy.

The application for a writ of mandamus is denied.

BURKE, Ch. J., and CHRISTIANSON, BIRDZELL, NUESSLE, and BURR, JJ., concur.