No. 27,416.

JEROME S. KOEHLER, *Plaintiff*, v. WILLIAM BEGGS, as County Clerk of Wyandotte County, *Defendant*.

SYLLABUS BY THE COURT.

ELECTIONS—*Primary Election—"Occurring Vacancies"—Construction of Statute.* The provision of the primary election law, that vacancies occurring after the holding of a primary may be filled by the proper party committee, applies only to vacancies in nominations made at the primary.

Original proceedings in mandamus. Opinion filed November 6, 1926. Writ denied.

*Thomas M. Van Cleave* and *Fred Robertson,* both of Kansas City, for the plaintiff; *Jerome S. Koehler,* of Kansas City, *pro se.*

*C. B. Griffith,* attorney-general, *W. C. Ralston,* assistant attorney-general, *Harry Hayward,* county attorney, and *J. H. Brady,* of Kansas City, for the defendant.

The opinion of the court was delivered by

BURCH, J.: The action is one of mandamus, to compel the county clerk of Wyandotte county to print plaintiff's name on the general election ballot as the Democratic candidate for judge of the district court of Wyandotte county, division No. 4, short term. The name of no Democratic candidate for the office appeared on the primary election ballot, the name of no Democratic candidate was written on the primary election ballot by a sufficient number of voters to nominate, and no Democratic nomination was made at the primary election held on August 3, 1926. On August 19, the Democratic party committee nominated plaintiff, and on September 7 a certificate of nomination in due form was filed. Defendant as county clerk declines to recognize the nomination. The primary election law contains the following provision:

"Vacancies occurring after the holding of any primary shall be filled by the party committee of the . . . county, . . ." (R. S. 25-220.)

Plaintiff bases his right to have his name printed on the general election ballot as a party nominee on a dictionary definition of a word. In his brief he quotes from the definition of "occur" contained in Webster's New International dictionary, the following:

<hr>

Elections, 20 C. J. pp. 111 n. 70, 126 n. 73, 127 n. 74. Occur, 29 Cyc. p. 1349 n. 55. Statutes, 36 Cyc. pp. 1110 n. 56, 1137 n. 42.

"To meet one's eye; to be found or met with; to present itself; to appear to happen; to take place," . . .

At the oral argument, the meanings which were stressed were those in the class with "to meet one's eye." Subsequent to August 3, a vacancy in respect to nomination for the office in question met the eyes of the members of the Democratic committee—presented itself, or appeared, or came to their minds. Therefore a vacancy occurred, and occurred after the holding of the primary election. Having thus justified use of the word occurring in the sense of existing, plaintiff undertakes to harmonize such use with the purpose of the statute, and to demonstrate foresight of the legislature. Plaintiff fortifies his position by citation of authority.

In the case of *State v. Wells*, 92 Neb. 337, a primary election case involving a like statute, the supreme court of Nebraska said it must give the ordinary meaning to the word occur, quoted the Webster definition of the word, and said:

"This seems to be plainly the sense in which the legislature used it in our statute. A vacancy on the ballot presented itself and appeared, and it was the province of the proper committee to fill such vacancy. If the only candidate voted for had died on primary day before the votes were cast, it will be conceded that a vacancy would occur. If after the primary there is a vacancy, it has 'occurred,' within the meaning of the statute." (p. 342.)

In the case of *Richardson v. Young*, 122 Tenn. 471, involving the filling of a vacancy in office, the court said:

"The words 'occur' and 'happen' are usually used in referring to vacancies in office, and mean the same thing.

"In *Fritts.v. Kuhl*, 51 N. J. Law, 192, 17 Atl. 102, it is said: 'The word "happen," in its strictest literal sense, signifies an unexpected event. It is also not uncommonly used as synonymous with "occur," "take place," "exist," and "happen to be." '

"Mr. Webster defines the verb 'to occur': 'To be found or met with'—and the Century dictionary: 'Be found; be met with,' and a quotation is given showing that it is synonymous with the word 'exist.'

"In Roget's Thesaurus, in treating of the state of 'being,' the word 'occur' is used as equivalent of 'exist.'

"We think that 'occur' or 'occurring' means the same as 'happen' or 'happening,' or that both may be used in the sense of 'existing' or 'to be found,' and that this definition has been given them in construing clauses of constitutions and statutes concerning the filling of vacancies." (p. 552.)

The fault in plaintiff's presentation of the question for decision lies in its method. He finds a legitimate meaning of a word in a dictionary, which suits his purpose, adopts that meaning, and from

Koehler v. Beggs.

that meaning proceeds to deduce a legislative act. The result is, his pyramid stands on its apex and not on its base, and his authorities are not persuasive.

The provision of the Nebraska primary election law which was involved in *State v. Wells,* supra, reads thus:

"Vacancies occurring upon any party ticket after the holding of any primary shall be filled by a majority vote of the party committee. . . ." (p. 341.)

The court turned to the dictionary, and found it was permissible to use the word "occur" in several ways, consonant with the sense of being or existing. The court then declared it seemed plain such was the sense in which the legislature used the word. The question for decision was whether the legislature used the word in that sense or in some other sense, and the court's statement did not make the matter plain. Demonstration followed. The court said the vacancy on the ballot presented itself and appeared, and it was the province of the proper committee to fill it. It is true a vacancy on the ballot presented itself and appeared, in the sense of meeting the eye of the party committee, but it was not the province of the committee to fill the vacancy unless the legislature used the word "occurring" as the equivalent of presenting itself or appearing in the passive sense of existing. The court then arbitrarily declared a concession would be made in respect to a situation not presented by the record for consideration. Finally, the court said that if, after the primary, there is a vacancy, it has occurred. This means that if, after the primary, a vacancy exists, the vacancy has occurred; and the statement could not be true unless the legislature used the word "occurring" in the sense of existing, and not in some other sense. If the legislature used the word "occurring" in the sense of existing, the court's statement comes to this: If after the primary there is a vacancy, it exists. Query: In what sense did the legislature of the state of Nebraska use the word "occur"?

In the case of *Richardson v. Young,* 122 Tenn. 471, the court was called on to interpret an act of the legislature providing for filling vacancies in the state board of elections. On investigation the court found the word "occurring" may be used in the sense of existing, and had been so defined in the interpretation of certain instruments providing for the filling of vacancies in office. The court did not, however, stop there, and declare that, because it was permissible to use the word in a certain sense, the legislature of Tennessee plainly used

it in that sense. The question remained, In what sense did the legis- lature use the word? and the court proceeded to ascertain the legis- lative intention according to accepted canons of interpretation. The conclusion was, the word "occurring" was used in the sense of "when- ever found existing." In view of the disastrous consequences which would follow a long-continued vacancy in the state board of election commissioners, the court said that, if the meaning were doubtful, public policy and effective administration of the law would require the doubt to be resolved in favor of the meaning adopted. (p. 554.)

Mr. Micawber's aphorism, "Accidents will occur in the best regu- lated families," is a familiar saying among those who have not read David Copperfield, as well as those who have, which reveals general and popular use and understanding of the word "occur." The father tells his boy to see to it that something which has taken place does not occur again; we read the morning papers for the incidents which occurred in the world the day before; and to the holders of' fire insurance policies, and some courts, the words of a policy, "after loss shall occur," mean after a fire. Turning to the definition of "occur" in Webster's New International dictionary, we find the fol- lowing in addition to what plaintiff and the supreme courts of Ne- braska and Tennessee quote:

"Syn.—Occur, happen are often used without distinction. But occur is the more formal word of the two, and applies esp. to that which is thought of as definitely taking place as an event; happen is the more general term for that which in any way comes to pass; as, when did it *happen?* cf. when did it *occur?* His death occurred at midnight; I don't know what *happened* (of. what *occurred*) after I left."

The Century dictionary, cited in *Richardson v. Young,* supra, further defines the word "occur" as follows:

"To emerge as an event into the actual world; happen; take place; come to pass; befall: as, what has *occurred?*"

Roget's Thesaurus, cited in the same opinion, further illustrates use of the word "occur" in the category of eventuality—event, in- cident, affair, transaction.

In the richest treasury of English words which we possess, the Oxford English dictionary, the following definition, among others, of "occur" is given:

"To present itself in the course of events; to happen, befall, take place as an event or incident."

Koehler v. Beggs.

Adopting plaintiff's method and applying the portion of the rule prescribed by the legislature for the construction of statutes which provides that words shall be construed according to the approved usage of the language (R. S. 77-201, second), the court might rest on these authorities, and declare the statute means that vacancies originating as events in time after nominations have been made at a primary, may be filled by the party committee. The statute requires, however, that interpretation must have a broader basis. Words shall also be construed according to the context (*Ib.*). In this instance the context is illuminating.

In its original form, the statute relating to primary elections (R. S. ch. 25, art. 2) was enacted in 1908. It provides that all candidates for elective offices shall be nominated by a primary held in accordance with the act. Some exceptions to universal application of the law, contained in the second section, are not immediately material. The statute then proceeds to unfold a scheme complete in every detail for the nomination of party candidates by primary election. R. S. 25-203 to R. S. 25-219, both inclusive, are devoted to the subject. The details include qualification of candidates necessary to secure printing of their names on the official primary ballot, publication of lists of names of qualified candidates, preparation of the official ballot, the holding of the primary election, and the canvass of returns. County canvass of votes is made pursuant to the law governing general elections. The returns shall contain the whole number of votes cast for each candidate of each political party, and a duplicate must be given to the county chairman of each political party (R. S. 25-217). R. S. 25-218 relates to canvass of votes by the state board of canvassers and publication by the secretary of state of a certified statement of the result of the primary. The section concludes as follows:

"On the fourth day after the completion of such state canvass or as soon as practicable thereafter, the secretary of state shall mail to each candidate found to be duly nominated by the state board of canvassers, a certificate of nomination, showing the name of the candidate, the party by whom nominated and the office for which he is nominated as specified in the nomination papers and determined by the state board of canvassers."

The next section reads:

"(1) The person receiving the greatest number of votes at a primary as the candidate of a party for any office shall be a candidate of that party for such office, and his name as such candidate shall be placed on the official ballot at the ensuing election for which such primary is held. (2) In case of

a tie vote, the respective boards of canvassers provided for by this act shall forthwith determine said tie by lot." (R. S. 25-219.)

Then follows R. S. 25-220, the section under interpretation, which reads:

"Vacancies occurring after the holding of any primary shall be filled by the party committee of the city, subdistrict, county, or state, as the case may be."

What vacancies are here referred to? The immediate context answers the question: Vacancies in the nominations of those persons who received the greatest number of votes at the primary as party candidates, and whose names as such candidates would, if nothing occurred to prevent, be placed on the official ballot at the ensuing election.

Regarding all that goes before the provision for filling vacancies as context, the context identifies the vacancies referred to in the section relating to filling vacancies. The first section of the law is given to definition of terms. The second section begins as follows:

"Hereafter all candidates for elective offices shall be nominated by: (1) A primary held in accordance with this act; . . ."

It is not necessary to indulge in reminiscence or speculation concerning the theory and purpose of the primary election law. The legislature has declared them in express terms. All candidates for elective offices shall be nominated by a primary. The declaration needs no interpretation. It is unambiguous and compulsory. A primary election shall be held. Ballots containing the names of candidates who have qualified to appear upon them are to be prepared, cast, and counted, with the result that candidates will be nominated. If after the law has been fulfilled, vacancies occur in those nominations, the party committee may then fill them with substitutes.

There is a helpful method of sounding legislative intention besides the statutory one of construing words according to context and approved usage of the language. Blackstone recommended it. The method is to consider the old law, the mischief, and the remedy. The old law and the remedy we know. To avoid controversy, we may substitute for the word "mischief" the phrase "system to be supplanted." Plaintiff says the system permitted candidates to be hand-picked for special purposes; and the court recalls that leading advocates of the compulsory primary at the time of its adoption were called boss-busters, and were imbued with great fervor.

Koehler v. Beggs.

The caucus and convention system of nominating candidates for office prevailed in Kansas until the compulsory primary law was enacted. In 1891 a statute was enacted that when a political party caused notice to be given of the holding of a primary election, such election should be held under the safeguards provided. The notice was ordered by the party central committee, and stated the purpose of the election (Laws 1891, ch. 115). The law did not accomplish the results hoped for, because party utilization of the primary was voluntary. The caucus and convention system continued to predominate, and the remedy was to make the primary system compulsory. The law of 1891 contained no provision for filling vacancies, and was expressly repealed by the primary law of 1908.

In 1893 an Australian ballot law was enacted, which was superseded by another in 1897 (Laws 1897, ch. 129). The Australian ballot law provided that the official election ballot should be made up from certificates of nomination by party conventions, caucuses, or primaries. Section 9 contained the following provision for filling vacancies:

"In case a candidate who has been duly nominated, under the provisions of this act, dies before election day, or declines the nomination as in this act provided, or should any certificate of nomination be held insufficient or inoperative by the officers with whom they may be filed, the vacancy or vacancies thus occasioned may be filled by the political party or the persons making the original nominations; or, if the time is insufficient therefor, then the vacancy may be filled, if the nomination was by convention, primary, or caucus, in such manner as the convention, primary or caucus had previously provided; or in case of no such provisions, then by the regularly elected or appointed executive or central committee representing the political party or persons holding such convention, primary meeting, or caucus. The certificates of nominations made to supply such vacancy shall state, in addition to the facts hereinbefore required by this act, the name of the original nominee, the date of his death or declination of nomination, or the fact that the former nomination had been held insufficient or inoperative, and the measures taken in accordance with the above requirements for filling a vacancy, and it shall be signed and sworn to by the presiding officer and the secretary of the convention, primary, or caucus, or by the chairman and secretary of the.duly authorized committee, as the case may be." (R. S. 25-307.)

Special elections to fill vacancies in office are excepted from operation of the compulsory primary law. Nomination of candidates to be voted for at such elections may still be made according to the caucus and convention system, and vacancies in those nominations may still be filled according to section 9 of the Australian ballot law,

which now appears as R. S. 25-307. Primary nominations referred to in the section are primary nominations under the act of 1891, and statutory authority for such nominations ceased with repeal of that act.

Summarizing the matter, the primary law of 1891 made no provision for filling vacancies, however occasioned, after the primary was held. The Australian ballot law recognized no privilege to place the name of a party candidate on the election ballot after close of the period for making nominations, unless a nominated candidate died, or declined, or his certificate of nomination was adjudged insufficient or inoperative. If a political party desired to nominate a candidate for an office, it was obliged to furnish him with proper nomination credentials, and if a party defaulted in making nominations, it could not subsequently exercise the privilege through its central committee. This is still the law governing special elections.

There is nothing in the compulsory primary law to indicate that the legislature intended it might be treated with greater indifference than the old law. The utmost pains were taken to afford opportunity to nominate by primary. Electors may bring forward candidates by petition. If the office display apathy in thus seeking the man, candidates may volunteer by filing a declaration and paying a fee. Ordinarily, desire for office will produce a sufficient crop of candidates. Every one having even slight familiarity with party politics knows that, in the event of crop failure, alert party leaders and party managers have ways of inducing candidacies. If both patriotism and pressure fail to produce either nomination or declaration papers for an office, the official ballot is prepared in a manner which discloses the fact, and voters at the primary election are privileged to write in blank spaces left for the purpose opposite the printed title of the office, the name of a candidate for the office. To say, in view of these liberal provisions, that the legislature deliberately intended merely by implication from the provision to fill vacancies, to reverse its policy, and authorize a political party which neglected, ignored, or renounced its primary opportunity, to back in and name candidates through action of its party committee, would be to run counter to the mandate that all candidates shall be nominated at a primary. On the other hand, if it be said that a case of no nomination at a primary is not a case of vacancy at all, and that vacancies occur only in nominations made as the law requires, the legislative policy is consistent throughout, the primary law is con-

sistent with itself, and the concluding section, relating to filling vacancies, completes the primary scheme and protects a political party against fortuitous breaches in its phalanx of primary nominees, occurring after the primary.

Other decisions of this court having a relation to the problem should be considered when the meaning of a statute is to be ascertained. No authoritative definition of the word "occur" has been discovered. The meaning of the word "vacancy" as applied to an office has been well discussed. (*Pruitt v. Squires,* 64 Kan. 855, 68 Pac. 643; *Barrett v. Duff,* 114 Kan. 220, 217 Pac. 274.) But there is no dispute in the present case that an office or other position is vacant whenever it is unoccupied by a qualified incumbent. In the case of *Bower v. Clemans,* 61 Kan. 129, 58 Pac. 969, section 9 of the Australian ballot law quoted above was interpreted. Nominations for county offices were regularly made at a party convention held on August 8. Time for filing certificates of nomination expired on October 8. The chairman and secretary of the convention failed to present the certificate of nominations made at the convention until October 11, and the county clerk refused to receive and file it. On October 13, the county committee nominated the nominees of the convention, and presented a certificate of nomination to the county clerk. The county clerk refused to file it, on the ground there had been no deaths or declinations and the certificate was presented out of time. The statute provided that in case any certificate of nomination should be held insufficient or inoperative by the officer with whom it should be filed, the county committee might fill the vacancy thus occasioned. The court held that presentation of the certificate of convention nominations to the county clerk for filing was tantamount to an actual filing, that the county clerk's refusal to recognize the certificate was a holding it was inoperative, and consequently that the county committee was authorized to fill the vacancy so occasioned. The decision sheds no light on the present controversy, and the court has heretofore made none that does.

Similar laws of other states and decisions of the courts of such states interpreting those laws, may be helpful when the meaning of an ambiguous statute is sought. In this instance, the court has examined the pertinent decisions of the courts of last resort of eighteen states, construing the primary election laws of those states. Pressure of other judicial work forbids detailed statement of the result of the examination, and the court must be content to an-

nounce, without giving the reasons, that nothing was discovered which would be of controlling influence in reaching a conclusion respecting the meaning of the Kansas law.

Having utilized available data on which to base a conclusion, the court is led to believe that the provision of the primary election law, that vacancies occurring after the holding of a primary may be filled by the proper party committee, applies only to vacancies in nominations made at the primary, and that nomination of plaintiff as a candidate for the office he seeks, by the county committee of his party, was not permitted by the primary election law.

The writ is denied.

MASON, J., not sitting.