No. 29,922.

J. D. M. HAMILTON, Chairman, J. E. WILSON, Secretary, and W. G. TANDY, *Plaintiffs*, v. KENNETH RAUB, County Clerk of Shawnee County, *Defendant.*

(292 Pac. 396.)

Opinion filed October 18, 1930.

*Hugh T. Fisher, Irwin Snattinger, E. B. Smith, D. W. Mulvane, Walter T. Chaney, J. D. M. Hamilton* and *Barton E. Griffith,* all of Topeka, for the plaintiffs; *Otis S. Allen, T. M. Lillard* and *J. J. Schenck,* all of Topeka, of counsel.

*William A. Smith,* attorney-general, and *W. C. Ralston,* assistant attorney-general, for the defendant; *Bennett R. Wheeler, S. M. Brewster, John L. Hunt, Virgil V. Scholes* and *Margaret McGurnaghan,* all of Topeka, of counsel.

The opinion of the court was delivered by

HARVEY, J.: This is an original proceeding in mandamus to compel the county clerk of Shawnee county to print the name of W. G. Tandy as the Republican candidate for commissioner from the second commissioner district on the official ballots for the election to be held in November of this year. It was presented upon the application for the writ.

The pertinent facts may be thus stated: At the general election held in November, 1928, J. A. Cole, having been previously nominated at the primary election held in August of that year, was the Republican candidate for the office of county commissioner from the second commissioner district of Shawnee county, and was duly elected for a term of four years beginning on the second Monday in January, 1929. He qualified and entered upon the discharge of his duties. He continued in office until his death, which occurred August 14, 1930. Thereafter the remaining county commissioners and county clerk, as provided by statute (R. S. 19-203), appointed a Mr. Noller as a member of the board of county commissioners to fill the vacancy in office caused by the death of J. A. Cole. At the primary election held August 5, 1930, no name appeared on the primary ballot as a candidate for county commissioner from the second commissioner district. No votes were cast for the nomination of anyone for that office at that election, and no nomination for the office was then made. On August 28, 1930, the persons who had been elected at the primary election August 5, 1930, one from each voting precinct in the county, as members of the Republican "county central committee," met, and the county central committee was organized by the election of J. D. M. Hamilton chairman and J. E. Wilson secretary. At that meeting nominations were made before the committee to fill the vacancy of a candidate on the Republican ticket for the office of county commissioner in the second commissioner district, and W. G. Tandy received a majority of the votes cast by the members of the committee; and on August 29, the chair-

man and secretary of the county central committee submitted and filed with the county clerk the certificate of such election by the committee of Tandy as the nominee of the Republican party for that position. It appears that no written objection was made to this certificate, and the tribunal provided for by R. S. 25-308 was not called to pass upon its validity. On September 15, in response to a request for a statement from him, the county clerk wrote a letter to the chairman of the Republican county central committee in which he stated that the name of W. G. Tandy would be placed on the ballot for the general election in November as the Republican nominee for county commissioner in the second commissioner district. The county clerk had been advised by the county attorney, who is the legal adviser of county officials (R. S. 19-704), that such procedure was proper. About October 7 the attorney-general, in writing, advised the county clerk that it was not proper to place the name of W. G. Tandy on the ballot for the general election in November as the nominee of the Republican party for county commissioner for the second commissioner district, and acting on that advice the county clerk announced that he would not place the name on the ballot. The application for the writ in this case was filed on October 9 and presented the next day. Because of the shortness of the time, it has received early attention by the court.

Broadly speaking, two questions are argued: *First,* when shall an election be held to fill the unexpired official term of office of J. A. Cole, deceased? Shall it be at the November election, 1930, or the November election, 1932? *Second,* if such election is to be held at the November, 1930, election, did the Republican county central committee have power and authority to select or choose a candidate or nominee whose name should be placed by defendant on the ballot for the November election?

Considering the first of these questions, it is argued on behalf of plaintiffs that the appointment of Noller by the other members of the board of county commissioners and the county clerk was to fill the office only until the next general election, at which time a commissioner should be elected (R. S. 19-203). Defendant contends the primary election law (R. S. 25-201 *et seq.*), in its provision with respect to the nomination of candidates to be voted upon at the general election, has the effect of making the primary election held on the first Tuesday in August a part of the general election, and hence that the term "next general election" used in R. S. 19-203 necessarily

means the next election held in November after the August primary election held after the vacancy in the office of county commissioner, and that since the primary election of 1930 was held August 5 and the vacancy in the office occurred thereafter, on August 14, 1930, by the death of the incumbent, there can be no election to fill the unexpired term until the November election, 1932. On this point the judgment of the court accords with the view of the plaintiffs. Our constitution, adopted in 1859, reads:

"General elections shall be held annually, on the Tuesday succeeding the first Monday in November. Township elections shall be held on the first Tuesday in April, until otherwise provided by law." (Art. 4, § 2.)

An amendment to this section of the constitution was submitted by the legislature of 1901 and adopted by the election held in November, 1902, which on this point reads:

"General elections and township elections shall be held biennially on the Tuesday succeeding the first Monday in November in the years bearing even numbers."

In *Bond v. White*, 8 Kan. 333, 341, it was said:

"The term 'general election' has both a constitutional and statutory definition, and means the election held annually on the Tuesday succeeding the first Monday in November."

In *Morgan v. Comm'rs of Pratt Co.*, 24 Kan. 71, 73, 74, it was said:

"The constitution defines the term 'general election.' It says: 'General elections shall be held annually, on the Tuesday succeeding the first Monday in November.' (Const., art. 4, § 2.) The November election is the general election, and that whether few or many offices are to be filled . . . The phrase 'general election' has a constitutionally defined, fixed, and uniform meaning, and is independent of the terms of office, or the number of officers to be elected."

There are many other decisions to the same effect, and no cases are cited to us, and our own research has disclosed none, to the contrary.

As to county officers, our constitution originally provided:

"The legislature shall provide for such county and township officers as may be necessary." (Art. 9, § 2.)

An amendment in 1876 of article 9, section 3, of the constitution specifically provided for county commissioners. But this was superseded by the amendment of article 4, section 2, adopted in 1902, which provides for county commissioners. Acting under the au-

thority of article 9, section 2, of the constitution, the legislature of 1860 passed an act relating to counties and county officers (ch. 28), section 9 of which reads:

"The board of county commissioners shall consist of three qualified electors, any two of whom shall be competent to transact business, to be elected by the qualified electors of the several counties respectively, at the general election, on Tuesday after the first Monday in November, annually; and, whenever a vacancy occurs in the office of said commissioners before the expiration of the term, the remaining commissioner or commissioners, together with the county clerk, shall choose some person to fill said vacancy, until the next general election."

Perhaps, because article 9, section 3, provided that county officers be elected for two years, this statute was invalid in so far as it provided for annual elections (*Leavenworth Co. v. State* [syllabi only], 5 Kan. 688), but, if so, that does not destroy the force of the statute for the purpose it is here cited, which is to show the early use of the term "general election" by the legislature in the same sense it is used in the constitution, and the consistency of the legislature in its provisions for filling a vacancy in the office of county commissioner. In later acts relating to the board of county commissioners the same language with respect to filling vacancies is used (G. S. 1868, ch. 25, § 10; Laws 1871, ch. 74, § 2). By chapter 129 of the Laws of 1901 that portion of the statute relating to vacancies was made a separate section, numbered 3, and to read as follows:

"When a vacancy occurs in the office of a commissioner, the remaining commissioner or commissioners and the county clerk shall appoint some one resident in the district to fill the office until the next general election, when a commissioner shall be elected to fill the unexpired term."

This wording is the present controlling statute and appears as R. S. 19-203. It will be noted that in all of these statutes relating to the filling of a vacancy in the office of county commissioner it is provided that the appointment by the other commissioners and the county clerk is only until the next general election. That term was defined by our constitution and, as previously pointed out, numerous decisions of this court are that the general election mentioned in the constitution and the statutes is the election held generally throughout the state on the Tuesday succeeding the first Monday in November. It should be noticed that chapter 129 of the Laws of 1901 (R. S. 19-203) adds to the previous statute on this question: ". . . when a commissioner shall be elected to fill the unexpired

term." This makes it clear, if there was any doubt about it before, that the appointee holds only until the next general election, at which time "a commissioner shall be elected" to fill the unexpired term. Analogous statutes with respect to vacancies in other county offices (R. S. 25-312 and 25-314), enacted early in the history of the state, have been repeatedly construed by the court in harmony with the views here expressed. (See *State, ex rel., v. Cobb*, 2 Kan. 32; *Hagerty v. Arnold*, 13 Kan. 367; *Jones v. Gridley*, 20 Kan. 584; *State, ex rel., v. Mechem*, 31 Kan. 435, 2 Pac. 816; *McIntyre v. Iliff*, 64 Kan. 747, 748, 68 Pac. 633.) This list is not intended to be complete. To hold to the contention of defendants we would have to give to the term "general election" a meaning different from that which had been used in the constitution, statutes and judicial opinions of this state throughout the seventy years since the state was organized, and say that in some indirect way the primary election law amended R. S. 19-203 so as to postpone, in a case such as we have before us, for two years the election of a county commissioner and to permit the appointee to hold under his appointment two years longer than is contemplated by the plain language of the statute. This we are unwilling to do. The result is that the next general election, as that term is used in R. S. 19-203, after the death of J. A. Cole, August 14, 1930, is the election to be held on the Tuesday after the first Monday in November, 1930, at which time the statute requires that "a commissioner shall be elected" to fill his unexpired term of office.

Passing now to the question whether the Republican county central committee had authority to choose a candidate or nominee for that party whose name should be placed by defendant on the ballot to be used at the general election in November. A consideration of our primary election law (R. S. 25-201 *et seq.*) and former decisions of this court, of which *State, ex rel., v. Lutz et al.*, 116 Kan. 621, 227 Pac. 334, and *Koehler v. Beggs*, 121 Kan. 897, 250 Pac. 268, are more directly in point, forces us to the conclusion that the county central committee does not have such power or authority. By the primary election law it was provided:

"Hereafter all candidates for elective offices shall be nominated by: (1) A primary held in accordance with this act; . . ." (R. S. 25-202.)

And to quote from *Koehler v. Beggs*, supra, the statute then provides:

"The statute then proceeds to unfold a scheme complete in every detail for the nomination of party candidates by primary election. R. S. 25-203 to R. S. 25-219, both inclusive, are devoted to the subject. The details include qualification of candidates necessary to secure printing of their names on the official primary ballot, publication of lists of names of qualified candidates, preparation of the official ballot, the holding of the primary election, and the canvass of returns. County canvass of votes is made pursuant to the law governing general elections. The returns shall contain the whole number of votes cast for each candidate of each political party, and a duplicate must be given to the county chairman of each political party (R. S. 25-217). R. S. 25-218 relates to canvass of votes by the state board of canvassers and publication by the secretary of state of a certified statement of the result of the primary. The section concludes as follows:

" 'On the fourth day after the completion of such state canvass or as soon as practicable thereafter, the secretary of state shall mail to each candidate found to be duly nominated by the state board of canvassers, a certificate of nomination, showing the name of the candidate, the party by whom nominated and the office for which he is nominated as specified in the nomination papers and determined by the state board of canvassers.'

"The next section reads:

" '(1) The person receiving the greatest number of votes at a primary as the candidate of a party for any office shall be a candidate of that party for such office, and his name as such candidate shall be placed on the official ballot at the ensuing election for which such primary is held. (2) In case of a tie vote, the respective boards of canvassers provided for by this act shall forthwith determine said tie by lot.' (R. S. 25-219.)

"Then follows R. S. 25-220, the section under interpretation, which reads:

" 'Vacancies occurring after the holding of any primary shall be filled by the party committee of the city, subdistrict, county, or state, as the case may be.'

"What vacancies are here referred to? The immediate context answers the question: Vacancies in the nominations of those persons who received the greatest number of votes at the primary as party candidates, and whose names as such candidates would, if nothing occurred to prevent, be placed on the official ballot at the ensuing election.

"Regarding all that goes before the provision for filling vacancies as context, the context identifies the vacancies referred to in the section relating to filling vacancies. . . .

"It is not necessary to indulge in reminiscence or speculation concerning the theory and purpose of the primary election law. The legislature has declared them in express terms. All candidates for elective offices shall be nominated by a primary. The declaration needs no interpretation. It is unambiguous and compulsory. A primary election shall be held. Ballots containing the names of candidates who have qualified to appear upon them are to be prepared, cast, and counted, with the result that candidates will be nominated. If after the law has been fulfilled, vacancies occur in those nominations, the party committee may then fill them with substitutes." (pp. 901, 902.)

The pertinent syllabus in *State, ex rel., v. Lutz et al.,* supra, reads:

"The person elected county treasurer in 1922 for the term beginning October, 1923, and ending October, 1925, failed to qualify, and the board of county commissioners filled the vacancy by appointment. *Held,* the appointee holds until the general election occurring in November, 1924. The vacancy is then to be filled by election of a candidate for the office nominated at the primary election to be held in August, 1924. The officer elected may qualify and enter upon the duties of his office immediately after election, and may hold during the unexpired term." (Syl. ¶ 1.)

The syllabus in *Koehler v. Beggs,* supra, reads:

"The provision of the primary election law, that vacancies occurring after the holding of a primary may be filled by the proper party committee, applies only to vacancies in nominations made at the primary." (Syl.)

In addition to the quotation previously made from the opinion in that case there is much discussion pertinent to the question under consideration, but we refer the reader to it rather than to quote at great length. It is clear that a legislative purpose in the passage of the primary election law was to make certain the method by which the candidate of a party could get his name on the ticket at the general election was to be nominated at the primary election, or to have his name substituted by his party committee in lieu of a candidate nominated at such primary and who had later died or had withdrawn, or in some manner created a vacancy in the nomination which had been once made at the primary. We are satisfied with the conclusion reached on that question by our previous decisions.

Plaintiffs stress clause (9) of R. S. 25-221 relating to party organization and government, which reads:

"Each committee provided for in this section, and its officers, shall have the powers usually exercised by such committees and by the officers thereof, in so far as is consistent with this act."

But it seems clear this relates to the power of the committee pertaining to internal affairs not governed by statute. It cannot be held to authorize the nomination of a party candidate by the county central committee for the reason that such nomination is a matter governed by statute.

The result is that the writ prayed for must be denied. But since there is a county commissioner from the second commissioner district to be elected at the general election to be held November 4, 1930, to fill the unexpired term of J. A. Cole, deceased, defendant should prepare the ballot so there is a place thereon for the electors to cast their ballots, such as the following:

For County Commissioner, Second District.
(Vote for one.)

------------------------------------------------------------------------------------ ☐

It is so ordered.

Burch, Marshall and Hutchison, JJ., concur in the judgment denying the writ.

Harvey, J. (dissenting in part): I dissent from the second paragraph of the syllabus and corresponding portion of the opinion. I am in accord with the decisions of this court in the Lutz and Koehler cases when confined to the specific questions before the court in those respective cases. But it is my judgment that to extend some of the language used in those cases to the question at issue here places too narrow a construction on R. S. 25-220, which reads:

"Vacancies occurring after the holding of any primary shall be filled by the party committee of the city, subdistrict, county, or state, as the case may be."

In the Lutz and Koehler cases the vacancies in no proper sense occurred after the holding of the primary. Facts which made it necessary or proper for an election of the official to be held at the general election in November existed prior to the date of the primary, and the respective political parties, or the individual members of them, could have seen to it that some one was nominated at the primary, if they had exercised themselves to do so, either by the filing of nomination petitions or certificates in sufficient time, or by voting for some one at the primary election. That is not true in this case. J. A. Cole was living at the time of the primary election, August 5, 1930. His death occurred nine days later. Had he continued to live there would have been no election for county commissioner in this district at the general election, 1930. It was therefore impossible for either of the political parties, or their members, to have the name of a candidate on the primary election ballot, or to nominate anyone at the primary election on August 5. As a result of the death of J. A. Cole on August 14 a vacancy occurred in the office which he held, that of county commissioner. That vacancy was filled by appointment by the other commissioners and the county clerk. Since that appointment was only until the next general election, when the statute imperatively requires that a commissioner be elected for the unexpired term, there resulted a

vacancy for that office on the ticket to be used at that election. Nothing demonstrates more clearly that there is a vacancy in the ticket than the order made by the court in this case that defendant provide on the ticket to be used at the election a blank line on which the electors may write the name of the person for whom they wish to vote for this office. This is a vacancy that occurred since the primary election. The language of R. S. 25-220 is broad enough to cover this situation, and, in my judgment, it is too narrow a view to say that it does not cover it.

Defendant raises a question that if there is a vacancy on the ticket the county central committee of the party is not the proper body to name a person whose name shall be placed on the ticket, and that it is given no authority by statute to do so. I cannot agree with that contention. R. S. 25-221 provides for party organization and government, and that at the primary election the members of the party residing in each voting precinct shall choose one of their number as "county precinct committeeman." The whole number of the persons so elected in a county shall constitute the county committee of the party for that county, and that committee shall be organized by the election of a chairman, secretary and treasurer. The chairman shall be a member of the state committee and of each of the district committees within which his county is situated. No party committee is provided for a commissioner district, or for any subdivision of the state smaller than a county (except for cities). It is specifically provided (clause 4) that where a judicial, senatorial, or representative district comprises one county or less, the county committee shall constitute such district committee. Since no committee is provided for a district less than a county it is the only committee provided by statute which could act upon this matter. In addition to that it is provided (clause 9) that each committee provided for by the act "shall have the powers usually exercised by such committees and by the officers thereof, in so far as is consistent with this act." Political parties and committees representing them are as old as our government. I think it safe to say that before their powers and duties were defined by statute it was not unusual for the committees of the various political parties to name a person to go on the ballot as the candidate of

that party for an office, when there was a vacancy on the ticket for any reason, whether it arose from the death or withdrawal of one previously nominated, or the death of an officeholder where the statute required the election of his successor.

R. S. 25-220 and 25-221 are parts of the primary election law. That law was designed to provide a regular method by which the names of party candidates or nominees should be placed on the ballot for a general election. I cannot think the purpose of the statute was to deprive political parties of the right to have on such ballot the names of their nominees regularly chosen; rather, the purpose was the opposite of that. Political parties are recognized by the statute, and when their committees are chosen and organized in accordance with the statute such committees are given specific authority to fill vacancies on the ballot when such vacancies occur after the primary, without limiting such power to the cause of the vacancy; and in addition, if anything need to be added, such committees are given the powers usually exercised by such committees.

I am authorized to say that Mr. Chief Justice JOHNSTON and Mr. Justice DAWSON join in this partial dissent.