No. 35,092

THE DISTRICT PARTY COMMITTEE OF THE REPUBLICAN PARTY OF THE TWELFTH JUDICIAL DISTRICT OF KANSAS, MRS. R. CAMERON, Chairman, and M. L. HILL, Secretary of said Committee, and W. D. VANCE, *Plaintiffs*, v. FRANK J. RYAN, Secretary of State, etc., *Defendant.*

(106 P. 2d 261)

Opinion filed October 16, 1940.

*M. V. B. Van De Mark,* of Concordia, *F. R. Lobaugh,* of Washington, *R. E. McTaggart,* and *N. J. Ward,* both of Belleville, for the plaintiffs.

*Jay S. Parker,* attorney general, and *Eldon Wallingford,* assistant attorney general, for the defendant.

The opinion of the court was delivered by

DAWSON, C. J.: Plaintiffs invoke our original jurisdiction in mandamus to require the secretary of state to certify the name of W. D. Vance, of Belleville, as the Republican candidate for district judge of the twelfth judicial district on the official ballot to be prepared by the county clerks of the three counties (Cloud, Republic and Washington) for the general election to be held on November 5, 1940.

The secretary of state pleads want of statutory authority to do so.

The controlling circumstances are these: In 1928, the late Tom Kennett, Esquire, of Concordia, was elected district judge of that district. He served so acceptably that at each quadrennial election thereafter he was renominated and reëlected with little or no opposition.

Being affiliated with the Democratic party, Judge Kennett always filed his candidacy as a Democrat, and usually the Republicans refrained from nominating a candidate against him. Such was the situation at the recent primary election in August of this year. Judge Kennett filed for the Democratic nomination. The Republicans did not nominate a candidate against him.

On September 3, 1940, Judge Kennett died. Thereafter the Republican and Democratic party committees met and named candidates to fill the vacancy on their respective tickets. The name of the Democratic committee's nominee will be certified and printed on the general ballot, according to the usual operative interpretation of the statute; but the secretary of state, on advice of his official counsel, holds that he cannot thus certify the name of the Republican committee's nominee, W. D. Vance.

Whether that attitude is correct depends upon a careful examination of the statute governing the filling of vacancies in nominations for office. Its pertinent provisions read:

"Vacancies occurring after the holding of any primary shall be filled by the party committee of the city, subdistrict, county, or state, as the case may be." (G. S. 1935, 25-220.)

"In case a candidate who has been duly nominated under the provisions of this act dies before election day, or declines the nomination as in this act provided, or should any certificate of nomination be held insufficient or inoperative by the officers with whom they may be filed, the vacancy or vacancies thus occasioned may be filled by the political party or the persons making the original nominations." (G. S. 1935, 25-307.)

The statutory provisions just quoted provide the only authority for filling vacancies in party nominations *occurring after the primary election.* The vacancy in the Republican ballot for the office of district judge did not occur after the primary. It occurred before the primary and at the primary. Being content with the qualifications and judicial record of the sitting judge who was the unopposed candidate for that office on the Democratic ticket, the Republican electors placed no candidate in the field for that office.

It is useless to elaborate on this simple matter. Were the question not so simple, it would be superfluous to write another dissertation on the subject, because what was essentially the same question was treated exhaustively in *Koehler v. Beggs,* 121 Kan. 897, 250 Pac. 268, in an opinion written by Mr. Justice Burch, the syllabus of which reads:

"The provision of the primary election law, that vacancies occurring after the holding of a primary may be filled by the proper party committee, applies only to vacancies in nominations made at the primary."

Cases involving substantially the same question under substantially similar statutes in accord with the foregoing are *State, ex rel. Corser, v. Scott,* 87 Minn. 313, 91 N. W. 1101; *State v. Hall,* 37 N. D. 259, 163 N. W. 1055; *Udie v. Byrne,* 60 N. D. 108, 233 N. W. 648;

*Stewart v. Polley,* 30 S. D. 54, 137 N. W. 565; *State, ex rel. Bancroft, v. Frear,* 144 Wis. 79, 128 N. W. 1068, 140 A. S. R. 992.

See, also, our own analogous case of *Hamilton v. Raub,* 131 Kan. 392, 292 Pac. 396.

A majority of this court adheres to the rule of the Koehler case, and the writ is therefore denied.

THIELE, J. (dissenting) : I cannot agree that a proper disposition has been made of this cause. As clearly appears from the majority opinion, Judge Kennett's services over a period of almost twelve years as judge of the twelfth judicial district were so satisfactory to the electorate he usually had no candidate opposing him, and it is clear that at the recent primary election he was the sole candidate on any ticket.

Under the statutes of this state, if he were to be a candidate, he had to file either under some party designation or as an independent candidate. Being affiliated with the Democratic party, he filed his declaration as a candidate of that party. It is said that because no one was named at the primary as a Republican candidate, there is no vacancy to be filled and therefore the designation by the party committee is of no consequence or effect. It is also said that had the Republicans so desired they could have put Kennett's name on their ticket, either by filing of nomination papers or by writing in his name, and had he been so nominated, and having made an election to run as a Democratic candidate as required by G. S. 1935, 25-306, then there would have been a vacancy on the Republican ticket which could be filled.

The actual situation is ignored. Members of all parties were satisfied with Judge Kennett and desired that he continue in office. Prior to the primary election no one even surmised that Judge Kennett would be suddenly stricken and that he would pass away after the primary and before the general election. His untimely passing presented a new situation.

The whole theory of our election laws has been to permit the electorate to choose for their officers those in whom the majority had trust and confidence, and to that end the laws have been liberally construed. Without attempting any analysis of the decisions noted in the majority opinion, it may be said that none involved a situation such as here presented and, as I view it, they are not in point here. In none of those cases did the only candidate nominated

at the primary resign or die after the primary and prior to the general election. In my view, the death of the sole candidate left a vacancy, not alone on the Democratic ticket, but on all tickets. On his death, the entire electorate should be represented in choosing who will be candidates for his successor.

I am authorized to say that Mr. Justice Smith concurs in the above views.