## ANDERSON v. COOK, Acting County Clerk.

No. 6554.   Decided October 26, 1942.   (130 P. 2d 278.)

See 18 Am. Jur., 275; 29 C. J. S., Elections, sec. 113.

*David J. Wilson,* of Ogden, and *Elias Hansen,* of Salt Lake City, for plaintiff.

*Grover A. Giles,* Atty. Gen., and *A. John Brennan* and *Zar E. Hayes,* Deputy Attys. Gen., for defendant.

PER CURIAM.

Application for a writ of mandamus to which a demurrer was filed. The same was argued on the demurrer which admitted the following facts:

That the plaintiff is a citizen of the United States, over the age of twenty-one years and is a resident and duly qualified elector of Brigham City, Box Elder County, Utah;

That defendant is the duly qualified and acting county clerk of Box Elder County, Utah;

That on the 22nd day of July, 1942, your plaintiff presented and left for filing with the defendant a written petition to have his name placed on the official primary ballot as a candidate for nomination by the Republican Party as its candidate for the office of County Assessor of Box Elder County, Utah;

That such petition so presented and left with defendant read as follows:

"Nomination Petition                                        Primary
"Nomination paper of Floyd C. Anderson for the office of County Assessor.

"State of Utah      }
"County of Box Elder } SS.

"For the purpose of having my name placed on the official Primary Ballot for nomination by the Republican party as its candidate for the office of County Assessor, I, the undersigned Floyd C. Anderson, do solemnly swear (or affirm) that I can qualify to hold said office both legally and constitutionally if elected, that I reside at Number 334 So. 2nd East street, in the city or town of Brigham, County of Box Elder, State of Utah, and that I am a member of the Republican party; that I believe in and intend to support throughout my term, if elected, the principles and policies of such political party; (that I affiliated with such party at the last general election of this State, and I voted for a majority of the candidates of such party at the last general election); that I intend to vote for a majority of the candidates of said party at the ensuing election for which I seek to be a candidate; that if nominated as a candidate of said Republican party at the ensuing election I will accept said nomination and, for the protection of the County Clerk, I agree that I will not withdraw as such candidate within the period of thirty days before the said regular

primary election; that I will not knowingly violate any election law or any law defining and prohibiting corrupt and fraudulent practice in campaigns and elections in this state, and that I will qualify for said office if elected thereto.

"Floyd C. Andersen"

That at the time said petition was so presented to the defendant the plaintiff paid to said defendant the fee required by law, namely: one-fourth of one per cent of the total salary for the full term legally or customarily paid to the person holding the office of County Assessor of Box Elder County, Utah;

That the petition above-mentioned was presented on the 22nd day of July, 1942, at the hour of fifteen minutes after 5 o'clock p. m. at what is generally known now as Mountain War Time;

That at the primary election held on the first Tuesday of September, 1942, no name appeared on the offical ballot used at such primary election on the Republican ticket for the office of County Assessor of Box Elder County, Utah, and no petition or nominating paper was filed for such office other than by plaintiff.

That three qualified electors of Box Elder County, Utah, wrote the name of plaintiff on the Republican ticket used at such primary election for the office of the County Assessor of Box Elder County, Utah, and no votes were cast for any other person at such primary election for the office of County Assessor of Box Elder County on the Republican ticket;

That after the primary election so held on the 1st day of September, 1942, to wit: On September 24, 1942, the County Central Committee of the Republican Party in and for Box-Elder County, Utah, after having determined that the plaintiff herein should be the candidate for the office of County Assessor of Box Elder County, Utah, on the Republican ticket at the November election in 1942, presented to and filed with the defendant herein a written designation that the plaintiff herein was and should be the candidate for

the office of County Assessor of Box Elder County, Utah, on the Republican ticket to be voted for at the general election to be held in November, 1942;

That no petition and no designation of nomination has been presented to or filed with the defendant or at all by or for any person whomsoever as a candidate for the office of County Assessor of Box Elder County, Utah, on the Republican ticket to be voted for at the general election to be held in November, 1942, other than as above stated;

That the plaintiff herein and the Central Committee of the Republican Party in and for Box Elder County, Utah, have made demand in writing upon the defendant herein that he, the said defendant as the Acting County Clerk of Box Elder County, Utah, issue to the plaintiff herein a certificate of nomination as a candidate for the office of County Assessor of Box Elder County, Utah, to be voted for at the election to be held in November, 1942;

That the defendant threatens to and refuses to have printed on the official ballot to be used at the general election to be held in November, 1942, the name of plaintiff herein as a candidate for the office of County Assessor of Box Elder County, Utah, on the Republican ticket;

That the Republican Party of Utah polled more than two per cent of the total vote cast for representatives to Congress in the general election held in Utah in 1939.

It is further admitted by both parties that the name of the plaintiff did not appear as a candidate for the office of County Assessor of Box Elder County, Utah, or for any other position on the ticket in the primary election.

Three questions are presented:

1.  Was the nomination petition filed within the statutory time?

2.  Does the County Central Committee of a political party have the power to designate a candidate for a particular office where no petition of nomination of anyone has been previously filed?

3. Where no petition for nomination for a particular office has been filed, can an elector at a primary election, by writing in the name of a person, nominate a person for such office?

As to the first question, the contention of plaintiff with respect to the time of filing the petition raises two questions, namely:

A. Was a petition filed subsequent to 5 o'clock p. m. on July 22nd, but prior to 5 o'clock p. m. July 23rd, 1942, filed within the period permitted by statute?

B. Was a petition filed at 5:15 p. m. Mountain War Time on the last day for filing petitions as allowed by statute filed within the statutory time?

As to "A," Section 16, Chapter 37, Laws of Utah 1939, reads as follows:

"Nomination petitions and designations of nomination required by this chapter to be filed with the county clerk shall be filed not more than one hundred days or less than forty days before the time fixed by law for the primary election. * * *"

It is conceded that election day (September 1st) is not to be counted but plaintiff argues that counting backwards from that date, using August 31 as day one, July 23rd would be the fortieth day, and what is done on the fortieth day is done "[not] less than forty days" before. Unfortunately for plaintiff this court, prior to the enactment of the statute in question, held that the language, "not less than fifteen days before election" meant that fifteen complete days must elapse between the date of filing and the day of election, and neither of those days could be counted in the fifteen days. *Wood* v. *Cowan*, 68 Utah 388, 250 P. 979. It must follow that when the legislature used in the present statute the language so construed, it intended the same meaning and construction. See, also, *Home Owners' Loan Corporation* v. *Stevens*, 98 Utah 126, 97 P. 2d 744. So computing time the petition must needs have been filed on or before July 22nd.

As to "B," Section 16, Chapter 29, Laws of Utah 1937, as amended by Chapter 37, Laws of Utah 1939, provides in part as follows:

"* * * All applications of persons for political party nominations must be filed with and received by the proper election officers not later than 5 p. m. on the last day which the filing may be made under the provisions of this section * . * *."

The plaintiff contended that since the act was passed at a time when what is commonly known as War Time, or Daylight Saving Time, was not in effect, that the Legislature contemplated the time which was in effect at the time the statute was passed as the time which would govern in determining filing time so long as the statute remained upon our books.

The case of *Salt Lake City* v. *Robinson*, 39 Utah 260, 116 P. 442, 446, 35 L. R. A., N. S., 610, Ann. Cas. 1913E, 61, is determinative of this question. In that case it was said:

"* * * When, therefore, the system is and has been in universal use, as in Salt Lake City, or as in New York City, as illustrated in the case of *Globe, etc., Inc. Co.* v. *David Moffat Co.*, supra [2 Cir., 154 F. 13], the courts not only may, but should, take judicial notice of that fact; and when time is a material ingredient, at least so far as laws are concerned, courts should apply the time in general use, and not that which by common consent has been discarded and has thus become obsolete."

So here, when not only the State of Utah but practically the entire nation entered upon and put into use what we call War Time, and practically all business, public and private, including schools, transportation systems, banks, stores, mail service, etc., operate upon such schedule, it becomes the time in general use, the standard time on which business operates and regulates political as well as social and economic life. Here too, the court having, prior to this statute, laid down the rule for construction of time statutes, it must follow that had the legislature

intended some other basis of computation it would have so specified. It follows therefore that the petition was not tendered to the respondent clerk in time.

We come now to question number 2: Does the party committee have power to designate a party candidate for an office for which no member of that party had filed for the primary election? The direct primary law was enacted in this state after a series of rather hectic conventions' battles for party nominations extending over some years, marked each succeeding election year by a growing demand for direct primary system of nominations. The struggles between factions within the parties, commonly called by such names as the "organization," the "machine," the "rank and file," "conservative and progressive," were often so bitter and strong as to defeat on election day a person nominated by the convention although the party won. The background out of which the act emerged, and the conditions which it was sought to remedy by the act must be borne in mind in seeking to understand and harmonize its various provisions. The act divides candidates for public office generally into two groups: Candidates of political parties, and independent candidates. Different methods of nomination are set up for the two classes. This reflects the legislative consciousness that political parties, having well-developed organizations extending from the state committee down to each election district (they are provided for by the act itself), has the equipment and machinery, unless carefully circumscribed, for selecting the party nominees through the same means and methods as the convention system. To prevent or lessen this dominance of particular groups over party nominations, the primary election was provided, whereby each individual member of the party could express his choice for party nominees, free from the pressure and surveillance of persons in a position of advantage over them.

With respect to "political parties" it was therefore provided in Section 5 of Chapter 29, Laws of Utah 1937:

"Political parties *shall select or nominate* their respective candidates * * * for the various * * * officers [offices] *by a primary election* or elections *herein provided,* and no candidate's name shall be printed upon the official ballot for any *general* or special *election* at which * * * officers are to be *elected unless* such candidates shall have been *nominated as specified in this act."* (Italics added.)

It then provides (Section 13) that any person desiring to become a candidate for a political party nomination shall file a petition not less than forty days before the primary election, to be placed upon the primary ballot. In this petition he must swear or affirm certain facts with respect to his political beliefs, history, and future conduct, and pay the fees provided. By Section 14, ten electors, members of the same political party, may accomplish a similar result by designating a party member who does not personally file for the office. Thus, if no party member satisfactory to the party voluntarily seeks a nomination, the party is not precluded from having a candidate upon its ticket; nor is it bound to the candidacy of the persons who, on their own initiative, seek the nomination. When the time for filing nomination petitions closes (not less than forty days before the primary) the right of the party to *nominate* for a position on the ticket is foreclosed. Any candidate so filing, or accepting a filing, knows that for forty days before the primary election he is under the spotlight of political scrutiny, and if he cannot stand the test and pass the examination he will be eliminated by the rank and file of the party. There cannot be forced down the throats of the party membership a candidate they do not want. By Section 17, an elector who seeks a party nomination and offers to subject himself to this forty-day scrutiny, is entitled to the party nomination if no one else has filed for the place. Since no other party member sought the nomination, and no ten members of the party sought to enter another candidate, it is presumed that such candidate is wholly satisfactory to the party and is its unanimous choice. No political party is obligated to enter any candidate for all

or for any office. Having through the medium of individuals entering as candidates, and the party privilege of entering candidates by petition of ten members, entered no candidates the law presumes that such party does not desire to enter a candidate for election to offices not so filled, and are foreclosed thereby from doing so. This seems to be the purpose, pattern, and general mosaic of the act.

It is argued that Section 40 gives to the party committee the right to fill vacancies on the ticket after the primary election, and that any place on the ticket not ▮▮▮▮ filled by a party candidate for that office is a vacancy on the ticket which the committee may fill. The section reads:

Section 40, Laws 1937, c. 29, as amended by Chapter 37, Laws of Utah 1939:

"Vacancies on the ticket occurring between any primary election and general election shall be filled by the party committee of the county, district, or state as the case may be.

"The nominee receiving the next largest vote at the primary election shall be named by said party committee to fill the vacancy; *provided*, that he received not less than twenty-five per cent of the nominating vote."

Does *vacancy* as there used mean a place for which a candidate has been nominated, but by reason of death, resignation or otherwise, ceases to be the nominee, or does it mean merely a vacant place on the ticket. We first call attention to the fact that the section authorizing filling vacancies provides that vacancies on the *ticket* (for the general election) occurring *between* any primary election and general election shall be filled by naming the nominee receiving the next largest vote at the primary, if he received 25 per cent of the nominating vote cast by the party at the primary. This section quoted contains two controlling elements: First, the vacancy must be one which *occurs between* two events; that is, one that did not exist at the time of the primary election, but does exist before the general election. In other words, a vacancy that occurred by reason of a nominee hav-

ing been chosen at the primary or who otherwise properly received a certificate of nomination but who afterwards, but before the general election, ceased to be a nominee. Second: If such vacancy does occur, the committee's right of selection to fill it is limited to the nominee receiving the next largest vote of the party for the office, if such nominee received 25 per cent or more of the party's nominating vote. This second provision reflects the intention of confining party candidates to those who filed for nomination at the primary election, qualified only by the provision that it would not foist or force upon a party as its candidate a person who could not obtain 25 per cent of the nominating vote of the party at the primary. We find no cases presenting this problem under a statute like ours. However, the Supreme Court of Florida under a statute similar in import has stated governing principles which we think best fit into the general mosaic of our act with special force. In *State ex rel. Chamberlain* v. *Tyler,* 100 Fla. 1112, 130 So. 721, 723, the court said:

"The general purpose of the Legislature in enacting mandatory primary laws was to preclude the making of nominations by convention, party committees, and the like, and to require that the people themselves, by their direct votes, should name party nominees. The only vacancies contemplated by section 14 of chapter 13761, supra, to be filled by executive committees, are such as may occur after the people themselves have made nominations, and vacancies therein have occurred by death, resignation, or other incapacity, which might perhaps include forfeiture to be determined by resolution of the proper executive committee on proper and sufficient cause shown.

"The statutory provision now before us should not be interpreted so as to allow a political party to ignore the mandatory requirement to nominate candidates by primaries, and to substitute some other method of selecting original party nominees.

\*　　\*　　\*　　\*

"A 'vacancy in nomination' is to be distinguished from a failure or omission to nominate at the primaries. There can be no 'vacancy in a nomination' until there has first been a nomination. When no nomination has been made, there may be a vacancy on the party ticket for the general election, but there is no vacancy 'in any nomination,' for there has been no nomination. The statute does not provide that,

'if for any cause there is a failure or omission by any political party to designate a nominee in the primary,' then the executive committee may designate a nominee. If such had been the legislative intent, it would have been very easy to so provide."

The language of our statute is that the committee may act when there is "[a vacancy] on the ticket *occurring between* any primary election and general election," not "when there has been no nomination" nor, "where no person shall offer himself as a candidate in the primary." We must construe the language as we find it. Doing so, we hold that the provisions of Section 40 relative to filling vacancies does not authorize a party committee to make an original nomination. The authority of the party committee to nominate is contingent upon a prior primary nomination followed by a vacancy in that nomination. Where, as here, a primary has been held in which there were no candidates for nomination for the office in question, the condition of Section 40 has not been fulfilled, and the committee is without power to act. No vacancy on the ticket has occurred between any primary election and the general election. *District Party Committee* v. *Ryan*, 152 Kan. 509, 106 P. 2d 261; *Koehler* v. *Beggs*, 121 Kan. 897, 250 P. 268; *Hamilton* v. *Raub*, 131 Kan. 392, 292 P. 396. In *Lucas* v. *Ringsrud*, 3 S. D. 355, 53 N. W. 426, it was held that

"when no certificate of original nomination has been filed in the office of the secretary of state, there can be no substitution of names, because the secretary of state has nothing in his office showing who had originally been nominated for the office, and whose place the substitute is to fill."

See, also, *Healey* v. *Wipf*, 22 S. D. 343, 117 N. W. 521; *State* v. *Polley*, 30 S. D. 54, 137 N. W. 565; *State ex rel. Pratt* v. *Hayward*, 141 Iowa 196, 119 N. W. 620; *State ex rel Corser* v. *Scott*, 87 Minn. 313, 91 N. W. 1101; 9 R. C. L. 1089. See notes to *State ex rel. Curyea* v. *Wells*, 92 Neb. 337, 138 N. W. 165, 41 L. R. A., N. S., 1088. Other cases involving substantially the same question under substantially

similar statutes are *State ex rel. Bancroft* v. *Frear*, 144 Wis. 79, 128 N. W. 1068, 140 Am. St. Rep. 992; *Udie* v. *Byrne*, 60 N. D. 108, 233 N. W. 648; *State* v. *Hall*, 37 N. D. 259, 163 N. W. 1055; *State ex rel. Lamb* v. *Board of Ballot Com'rs*, 82 W. Va. 752, 97 S. E. 284.

We are fortified in this conclusion by the provisions of Section 45 of Chapter 29. It is there provided that any qualified person may have his name printed upon the ballot for the general election as a candidate for any office to be filled at such election as an independent candidate for office, but not as the candidate of a political party. This harmonizes with the statement made earlier that political parties must select candidates who run under the party designation by the primary method or not at all. Section 5.

This brings us to the third question: Can one whose name does not appear on the primary ballot win a party nomination by having his name "written in" at the primary election? Our statute is silent as to the right of a voter to write in names on the primary ballot, except as to one veiled implication referred to hereinafter.

The general election law provides that a blank ticket must be provided on the ballot to the right of the regular tickets wherein the voter may write in the name of any person for whom he desires to vote, and whose name does not appear for such office upon the ballot. Section 25-6-5, R. S. U. 1933. The law provides for scratching ballots at the general election. Section 25-6-20. This is not possible at the primary. At the general election there is specific provision for, and how to, vote for someone whose name is not upon the ticket, (write in). Section 25-6-20. No such provision is found in the primary law.

The only reference, even impliedly to "write in" at the primary is found in one sentence in Section 25 of Chapter 29, Laws of Utah 1937:

"* * * If any elector writes upon his ticket the name of any person who is a candidate for the same office upon some other ticket than that upon which his name is so written this ballot shall be coun-

ted for such person only as a candidate of the party upon whose ticket his name is written, and in no case shall be counted for such person as a candidate upon any other ticket."

This statement implies a right of a voter to "write in" some name. The question is: Can he write in any name or is he limited to names appearing upon the printed ballot, that is, to the names of persons who had filed for the office upon one ticket or another, who had declared themselves, and exposed themselves to the forty days of scrutiny and examination before the primary. Construing these two quotations together with the general purposes and mosaic of the act as developed above, we conclude that the "write in" privilege is limited to the names already appearing on the printed ballot. A voter may thereby, if after the forty days' examination and scrutiny of the candidate upon his party ticket, and the rival candidates upon other party tickets, reject all candidates for the office upon his ticket and give his vote for his party nomination to a candidate whom he thinks in the light of publicity and examination of his qualifications would, of all persons seeking the nomination at the primary, be the best candidate for his party. But such vote cannot be combined with the vote the candidate received on his own party ticket. His vote for the party nomination is measured by his vote under that party emblem, and not by his combined vote on all tickets as is done at the general election. Since the people in Utah are so familiar with the general "write in" practice and procedure, and the legislature has so carefully prescribed it for the general elections, and could so easily have done it here, we do not feel justified in writing into the statute what it seems clear the legislature definitely left out.

It is suggested that unless the act be so construed as to provide for a "write in" privilege it would offend against Section 17 of Article I of the State Constitution which provides:

"All elections shall be free, and no power, civil or military, shall at any time interfere to prevent the free exercise of the right of suffrage."

While this provision guarantees the qualified elector the free exercise of his right of suffrage, it does not guarantee any person the unqualified right to appear as a candidate upon the ticket of any political party. It cannot be construed to deny the legislature the power to provide regulations, machinery and organization for exercising the elective franchise, or inhibit it from prescribing reasonable methods and proceedings for determining and selecting the persons who may be voted for at the election. The provision not being self-executing requires the legislature to provide by law for the conduct of elections, and the means of voting, and the methods of selecting nominees. Since the legislature has prescribed the nominating machinery, the method of selecting candidates for office to be voted on at the general election, the quoted constitutional provision does not require us to read into the direct primary act a provision which would avoid the evident purposes for which the law was enacted, to wit: placing the selection of candidates who are to appear upon the ticket of a political party in the hands of the electors within the party through the exercise of their elective franchise. In *Earl* v. *Lewis*, 28 Utah 116, 77 P. 235, we held that while the right of persons having the constitutional qualifications of a voter cannot be impaired, the voter himself may waive the exercise of that right by not exercising it in the manner prescribed by the statute. The absence of a "write in" provision does not void the law on constitutional grounds. We hold therefore that plaintiff is not entitled to appear upon the ballot for the general election as the Republican candidate for county assessor, and the application for the writ is denied. Costs to respondent.

MOFFAT, C. J., not participating.

PRATT, J., on leave of absence.