No. 33,278

C. A. PARSONS et al., as Electors of the Union Party, a Political Organization, *Plaintiffs*, v. FRANK J. RYAN, Secretary of State, etc., *Defendant.*

(60 P. 2d 910)

Opinion filed September 22, 1936.

*Dennis Madden,* of Topeka, for the plaintiffs.

*J. L. Hunt, Margaret McGurnaghan, John H. Hunt* and *George M. Brewster,* all of Topeka, for the defendant.

*Clarence V. Beck,* attorney general, and *Theo. F. Varner,* assistant attorney general, as *amici curiae.*

The opinion of the court was delivered by

THIELE, J.: This is an original proceeding in mandamus to compel the secretary of state to receive and file nomination papers of the plaintiffs as candidates of the Union party for presidential electors.

Plaintiff's motion for the writ alleges the organization of the Union party as a national political party on June 28, 1936, and that at a mass convention held at Topeka, Kan., on August 29, 1936, plaintiffs were elected as candidates for presidential electors of said Union party; that a certificate of selection of such candidates was presented to the secretary of state with request that he file it and enter the names of said candidates on the ballot to be used at the coming general election, and that the secretary of state refused to receive and file said certificate for the sole reason it was not presented on or before June 20, 1936; that said secretary refused to hear plaintiff's claims, or to refer the question to the ballot board, or to procure any opinion of the attorney general of Kansas on the question.

The secretary of state answered, denying that he refused to accept and file the above-mentioned certificate for the sole reason it

was not presented for filing on or before June 20, 1936, although that was one of his reasons for such refusal; that his further reasons were that since the nomination was by a convention it was a party nomination and could not be filed, but would have to be made in accordance with the primary law (R. S. 25-201 *et seq.*) and that under said law the names would have to be filed on or before noon of June 20, 1936, and that it was necessary that each candidate pay to the secretary of state a fee of ten dollars, which fees were not tendered or paid.

Under the issues as made up, the principal question presented is, When must the candidates designated by a mass convention of a political party having a state or national organization present their certificates of nomination to the secretary of state? The answer requires that we notice the constitution of the United States and the election laws of this state.

In the constitution of the United States, article II deals with the executive department and the election of the President and Vice-President. In the second paragraph of section 1, it is provided that:

"Each state shall appoint, in such manner as the legislature thereof may direct, a number of electors," etc.

It thus appears that the duty of determining the manner of selection of presidential electors is cast upon the legislature. We have always had statutory provisions with respect to elections, and among others referring to the election of presidential electors are the following: Laws 1864, ch. 57; G. S. 1868, page 428, sec. 3; Comp. Laws 1879, ch. 36, sec. 109; G. S. 1889, sec. 2769; Laws 1893, ch. 78, sec. 14; Laws 1901, ch. 177, sec. 6; R. S. 25-101. In 1893 the Australian-ballot law was enacted. (See Laws 1893, ch. 78.) In 1897 a more comprehensive election law was enacted (Laws 1897, ch. 129) and the former act was repealed. Under the terms of the latter act, nominations by convention of delegates, primary, caucus or meeting of a political party were recognized and regulated as to percent of voters, etc. Under section 7 of the act it was required that certificates of nomination and nomination papers of candidates for offices to be filled by electors of the entire state must be filed with the secretary of state not less than forty days before the date fixed by law for the election for which candidates are nominated.

In 1901 many sections of the 1897 act were amended and the original sections repealed. Under Laws 1901, chapter 177, section

3, independent nominations were recognized. Laws 1897, chapter 129, section 7, was amended by Laws 1901, chapter 183, and the original section was repealed. The amendment did not change the time in which nomination papers must be filed.

In 1908 the compulsory primary law was enacted (Laws 1908, ch. 54). It has since been amended in certain particulars which need not now be noticed. Neither is it necessary that we again examine the compulsory features of the last-mentioned act, various features of which were treated in *Koehler v. Beggs*, 121 Kan. 897, 250 Pac. 268, and *Hamilton v. Raub*, 131 Kan. 392, 292 Pac. 396, and the cases cited therein. It may here be noted that notwithstanding the compulsory features of the primary law it recognized that candidates for elective offices could be nominated by "(2) independent nomination papers, signed and filed as provided by existing statutes." This particular language is now contained in R. S. 25-202. It may also be observed that the primary law did not pretend to prevent the organization of new political parties. Accordingly, when the statutes were revised in 1923, there was included not only the primary law, but the existing law with reference to independent and other nominations.

In the revision of 1923 the provisions of the primary law were revised in particular instances and appear as R. S. 25-201 to 25-224, inclusive. The provisions of Laws 1897, chapter 129, as amended by Laws 1901, chapter 177, and Laws 1901, chapter 183, were revised and appear as R. S. 25-301 to 25-311, inclusive. Insofar as certificates of nomination and nomination papers of candidates for offices to be filled by the electors of the entire state are concerned, the time for filing with the secretary of state was fixed as not later than noon of September 20 preceding the general election. The revised section appears as R. S. 25-305. Under R. S. 77-105 and 77-114 there was a repeal of any inconsistent provisions of the revised acts. Later, R. S. 25-305 was amended by Laws 1925, chapter 164, to provide that certificates of nomination and nomination papers of candidates to be filed by the electors of the entire state must be filed with the secretary of state not later than the date required of party candidates to file their nomination papers, preceding the general election, all other certificates for nomination of candidates to be filed with the county clerks of the respective counties not later than noon of October 1 preceding the general election. Other provisions need not be noticed. The original section was repealed.

The section was again amended by Laws 1927, chapter 202, and the prior enacted section repealed. The last act provided that certificates of nomination and nomination papers of candidates for offices to be filled by the electors of the entire state, *including state, district, county and township offices* must be filed not later than the date required of party candidates to file their nomination papers prior to the general election. It may here be observed that under R. S. 25-205 party candidates must file their nomination papers not later than noon of June 20 preceding the primary election at which they are candidates. All candidates, whether under the 1897 act as amended or under the primary election law, are thus compelled to file their nomination papers on or before the same date.

We now notice the arguments of plaintiffs why the writ should be granted. First, it is urged the certificates are in apparent conformity to law and that under R. S. 25-308 they are deemed to be valid unless objection is duly made as provided in the statute. Secondly, it is urged that the provisions of the primary act do not apply, and that the effect of the amendments fixing the time in which nomination papers must be filed apply only to independent and not to party nominations, and that the amendments of R. S. 25-305 did not change the time for filing party nominations. Thirdly, that the right of suffrage includes the right to form political parties, that all election laws are but exercises of the police power and as such subject to constitutional restrictions, and fourthly, that the case relates to presidential electors, and the federal constitution requires they shall appear on the general ballot.

The federal constitution requires that each state shall appoint presidential electors in such manner as the legislature may direct. The duty thus placed upon the legislature has been performed and, as shown above, provision has been made for the appointment or selection of presidential electors. There is no requirement that electors without regard to number may have their names printed on the ballot. We are not persuaded by the argument that the enactment of election laws, being an exercise of police power, is subject to constitutional restrictions which prevent the legislature from limiting the right of candidates to have their names on the general ballot. As has been shown, the federal constitution commands the state legislature to direct the manner of choosing electors. The legislature has provided an orderly way for the selection of candidates for presidential electors, and that it saw fit to have them

chosen in the same manner as candidates for United States senator, representatives in congress, and every state, county and township officer cannot be urged as discriminatory, unfair, illegal or unconstitutional. The manner selected by the legislature may not be set aside by the courts simply because the effect is to limit the number of persons whose names may appear as candidates. In this case the limitation is because of failure to file in time. In other cases, it might be because the nomination papers did not contain a sufficient number of signers, or because, under certain circumstances, requisite fees were not tendered and paid. It is rather obvious there must be some time fixed after which nomination papers cannot be received and filed. The legislature by reason of the various enactments has fixed that date. If it is to be changed it must be by the legislature, not by this court.

Neither can it be said that the amendments of R. S. 25-305 pertain only to independent and not to party nominations. The history of the statutes has been traced. Independent nominations were not a part of our original election acts; they were included by the act of 1901, and the time for filing them was the same as for party nominations as that term is used in the statute. Since their inclusion they have always been treated along with and in the same manner as party nominations. When by reason of various amendments the dates on which they must be filed have been changed, the original sections have always been expressly repealed, and there is no good ground on which to claim that the amendments affected independent but not party nominations.

Nor can it be said that because the certificates are in form the secretary of state was compelled to receive and file them, and that they should be deemed valid unless objection was made under R. S. 25-308. The statute fixes the time when nomination papers must be tendered to the secretary of state. If they are tendered later he is without authority to receive and file them. To hold otherwise would be to say he could receive nomination papers up to the date of an election, with the result that no elector would know who the candidates were until he received his ballot at the general election. The legislature was well aware that such a cause for confusion should be avoided.

Because the nomination papers were offered for filing at too late a date the secretary of state properly refused to receive and file them. It is unnecessary to discuss, therefore, the contention of the

secretary of state that filing fees were not tendered and paid by the plaintiffs.

The writ prayed for should be and it is denied.

WEDELL, J., not sitting.