No. 35,077

W. E. WIGGANS, JOHN E. HESTER, WILLIAM J. BURNLEY, P. M. DUNCAN, DAN FREER, ROBERT JOHNSON, PEARL WATERS, LEO H. BLANKEN and DELMAR DEAN, *Plaintiffs*, v. FRANK J. RYAN, as Secretary of State, etc., *Defendant*.

(106 P. 2d 711)

Opinion filed November 9, 1940.

*C. J. Evans,* of Topeka, and *Hart E. Baker,* of Chicago, Ill., for the plaintiffs.

*Jay S. Parker,* attorney general, and *E. V. Bruce,* assistant attorney general, for the defendant.

The opinion of the court was delivered by

ALLEN, J.: This is an original proceeding in mandamus to compel Frank J. Ryan, secretary of state, to accept and file the certificate

of nomination of the plaintiffs as candidates for the office of electors for president and vice-president of the United States, and to certify to the several county clerks of the counties in Kansas the names of the plaintiffs as candidates of such party for such offices.

The petition alleged that plaintiffs are residents and qualified voters of Kansas; that the Communist party is a political party having a national organization; that such party has duly nominated candidates for president and vice-president of the United States subject to the general election in 1940; that the Communist party has had for more than one year last past, a party organization in the state of Kansas; that at a mass convention of the party held at the city of Pittsburg, Kan., on the 4th day of May, 1940, the plaintiffs were duly nominated by such convention for the office of electors for president and vice-president of the United States at the general election to be held in November, 1940. A certificate of nomination of the plaintiffs, signed by the president and secretary of the convention, is attached to the petition. An affidavit showing the national organization of the Communist party is filed with the papers.

Plaintiffs, for their second cause of action, alleged that independent nominating petitions, as provided for in G. S. 1935, 25-205, and signed by more than 2,500 qualified voters of the state, were, on June 18, 1940, tendered to the defendant secretary of state, but that defendant refused to accept the petitions as a proper and lawful nomination of plaintiffs under the law. This cause of action was abandoned by plaintiffs in the oral argument before the court, and will receive no further consideration.

It was further alleged that on the 8th day of May, 1940, the plaintiffs tendered the defendant Frank J. Ryan, secretary of state, the certificate of nomination from the Pittsburg mass convention, and requested that the certificate of nomination be filed as a party nomination certificate, and that the defendant Ryan refused to file the certificate. Plaintiffs ask the court to issue a writ of mandamus commanding the defendant as secretary of state to accept and file the certificate of nomination, and to certify it to the several county clerks as required by law.

The answer of the defendant, Ryan, admits the tender of a paper denominated "certificate of nomination by party" at the time stated; that the exhibit attached to the petition is a correct copy; that he refused to file the paper, and refused to certify the names of the

plaintiffs as presidential electors to the several county clerks of Kansas. The answer denies that the plaintiffs are the nominees of a political party having a state or national organization; denies that the alleged certificate of nomination is in actual or apparent conformity to law, and alleges that the plaintiffs failed to tender or pay the $10 fee for each of the plaintiffs as required by law, and prays the writ of mandamus be denied.

It is contended that the nomination of plaintiffs as presidential electors by a mass convention is authorized by G. S. 1935, 25-301 and 25-302; that the certificate of nomination by party is sufficient, and that the law does not require the payment of fees by the candidates under a nomination so made.

The questions presented call for the construction of various provisions of our election laws. We quote pertinent provisions of the primary election statutes, G. S. 1935:

"Hereafter all candidates for elective offices shall be nominated by: (1) A primary held in accordance with this act; (2) independent nomination papers, signed and filed as provided by existing statutes. This act shall not apply to special elections to fill vacancies, nor to annual or special school-district meetings for the election of school-district officers, nor to city elections where the population is less than 5,000." (§ 25-202.)

"The names of candidates shall be printed upon the official primary ticket when each shall have qualified to become a candidate in one or the other of the following-described methods and none other: *First,* they shall have had filed in their behalf, not later than twelve o'clock noon, June twentieth, prior to such primary election, or if such date falls on Sunday, then before twelve o'clock noon the following day, nomination papers, commonly called nomination petitions, as provided for in this act: Or, *second,* they shall have filed not later than the time for filing nomination papers, as above provided, with the proper officer, as hereinafter prescribed, a declaration of intention to become a candidate, accompanied by a fee, as hereinafter provided. . . . The basis of a percentage shall be the vote of the party for secretary of state at the last preceding election; or, in case of a new party, the basis of a percentage shall be the vote cast for the successful candidate for secretary of state at the last preceding election; and any political organization filing nomination papers for a majority of the state or county officers, as provided in this act, shall have a separate primary election ticket as a political party, and, upon receipt of such nomination papers the respective officers shall prepare a separate state and county ticket for such new party in their respective counties or subdistricts thereof in the same manner as is provided by this act for existing parties. . . ." (§ 25-205.)

"When a candidate in lieu of nomination papers shall file a declaration of intent to become a candidate for any office the accompanying fee shall be in amount as follows: For presidential electors, ten dollars. . . ." (§ 25-206.)

With the foregoing provisions of the primary election laws we must consider G. S. 1935, 25-301 and 25-302, under statutory title of "Independent and other nomination certificates; terms of office; filling vacancies."

"All nominations made by political parties shall be known and designated as 'party nominations,' and the certificates by which such nominations are certified shall be known and designated as 'party certificates of nomination.' Party nominations of candidates for public office can be made only by a delegate or mass convention, primary election or caucus of qualified voters belonging to one political party having a national or state organization: *Provided,* That party nominations for city officers may be made by a convention, primary election or caucus of qualified electors belonging to a political party having only a local organization. Party nominations so made shall, subject to the provisions of this act, be placed upon the official ballot." (§ 25-301.)

"Any political party having a state or national organization, by means of a delegate or mass convention, primary election, or caucus of qualified voters belonging to such party, may, for the state or municipality, or any lawfully organized portion of either, for which such convention, primary election or caucus is held, nominate one person for each office that is to be filled therein at the next ensuing election, and, subject to the provisions of this act, file a certificate of such nominations so made. Every such certificate shall be signed by the presiding officer and a secretary of the convention or caucus making such nominations. Where such nominations are made by primary election, the certificate shall be signed by the members of the board of canvassers to which the returns of such primary election are made. In each case the persons signing the certificates shall add to their signatures their places of residence, and shall make and subscribe an oath that, to the best of their knowledge and belief, such certificates and the statements therein made are true; and a certificate that such oath has been taken and administered shall be made and signed on such certificate of nomination by the officer before whom the same was taken." (§ 25-302.)

Independent nominations may be made under section 25-303. Under this section independent nominations of candidates for any office to be filled by the voters of the state at large, or by the voters of a county or district, or by the voters of a township, city or ward, may be made in the manner therein provided.

As stated, plaintiffs contend that nominations for presidential electors may be made by a mass convention under G. S. 1935, 25-301 and 25-302. It is asserted that these sections were retained in order to afford a reasonable opportunity for the candidates of a new party to get on the ballot for the general election. In effect, the contention is that the compulsory primary law applies only to the existing political parties—that it has no application to nominations by a new party.

The defendant, Ryan, contends that section 25-302, providing for the nomination of candidates for public office by a political party having a state or national organization by means of a delegate or mass convention is obsolete, and has been repealed by section 25-202.

It is evident the parties to this controversy find an irreconcilable conflict in the various statutory provisions.

In construing a statute the legislative intention is to be determined from a general consideration of the whole act. Effect must be given, if possible, to the entire statute and every part thereof. To this end, it is the court's duty, so far as practicable, to reconcile the different provisions of our statutes relating to the nomination of candidates for elective offices, so far as to make them consistent, harmonious and sensible.

In ascertaining the legislative intent, statutes on the same subject should be construed as a whole.

*Judd v. Driver*, 1 Kan. 455; *Bridge Company v. K. P. Rly. Co.*, 12 Kan. 409; *Gardenhire v. Mitchell*, 21 Kan. 83; *State, ex rel., v. Mitchell*, 50 Kan. 289, 33 Pac. 104; *McCreedy v. City of Fort Scott*, 113 Kan. 753, 216 Pac. 287; *Barrett v. Duff*, 114 Kan. 220, 217 Pac. ·918; *Iola B. & L. Ass'n v. Allen County Comm'rs*, 152 Kan. 365, 103 P. 2d 788.

Under the constitution of the United States, the state legislatures have plenary power to determine the manner of choosing presidential electors. (*Parsons v. Ryan*, 144 Kan. 370, 60 P. 2d 910; *McPherson v. Blacker*, 146 U. S. 1, 13 S. Ct. 3, 36 L. Ed. 869.)

The compulsory primary election law of this state was enacted in 1908. That law was chapter 54 of the Laws of 1908, and as now amended and supplemented appears in the General Statutes of 1935 as sections 25-201 to 25-224, inclusive.

Prior to the enactment of the compulsory primary election law, nominations for elective offices made by political parties and independent nominations were made in the manner prescribed by the Laws of 1901, chapter 177. The sections of that act, as amended and supplemented, which are pertinent to this controversy, now appear in the General Statutes of 1935 as sections 25-301 to 25-306, inclusive.

Section 25-301 provides that "Party nominations of candidates for public office can be made only by a delegate or mass convention, primary election or caucus of qualified voters belonging to one political party having a national or state organization." This sec-

tion sets forth the mode of the nomination of candidates by the convention system prior to the compulsory primary law passed in 1908. The struggle to eliminate the evils of the convention system of nominating candidates for elective offices is part of the history of the state. The practice under the convention system was for each political party to hold delegate conventions to nominate candidates for state and county offices. The boss-controlled conventions aroused public criticism. The answer was the compulsory primary election. Under the primary method the candidates are nominated directly by the voters of each party, instead of indirectly through representatives called delegates. Nominations for elective offices were no longer to be the concern of political parties alone—such nominations were placed under the protection of the laws of the state.

But the primary law did not purport to make a clean sweep and abrogate all other methods. Independent nominations were permitted in the mode set out in section 25-303. In addition to independent nominations the legislature saw fit to make certain other exceptions—special elections to fill vacancies, elections of school-district officers, and in city elections where the population is less than 5,000.

Section 25-302 must be read in the light of section 25-202. For convenience we again quote that short section:

"Hereafter all candidates for elective offices shall be nominated by: (1) A primary held in accordance with this act; (2) independent nomination papers, signed and filed as provided by existing statutes. This act shall not apply to special elections to fill vacancies, nor to annual or special school-district meetings for the election of school-district officers, nor to city elections where the population is less than 5,000." (G. S. 1935, 25-202.)

Every part of this section deserves careful attention. The use of the word "hereafter" shows that it was the intent of the legislature that after the effective date of the primary election act *"all candidates for elective offices"* were to be nominated by two methods (1) by a primary, and (2) by independent nomination papers. But why was section 25-302, providing for convention nominations, retained by the legislature? The solution of the problem is found in the last sentence of section 25-202, which states:

"This act shall not apply to special elections to fill vacancies, nor to annual or special school-district meetings for the election of school-district officers, nor to city elections where the population is less than 5,000."

It is therefore clear that the legislature preserved section 25-302 to furnish the machinery for school-district elections, elections in cities where the population is under 5,000, and in special elections to fill vacancies. In such cases, and such cases only, are nominations by mass or delegate conventions allowed. Therefore, the only method by which presidential electors may be nominated is by a primary election held under the compulsory primary law.

The primary law provides two methods whereby candidates may get their names on the primary ballot: By filing nomination papers under section 25-205, or by filing a declaration of intention to become a candidate and paying the fee prescribed by section 25-206.

Section 25-205, above quoted, makes certain requirements as to the nomination of candidates for a new party. This certainly excludes such candidates from nominations by a declaration and filing a fee under section 25-206. The cost of printing the separate ballots for a new party no doubt influenced the legislature in making the requirements for a new party under section 25-205. If the candidates of a new party were permitted to go on the ballot merely by filing a declaration of intention, and the payment of a fee under section 25-206, obviously a small group could compel the printing of the necessary separate ballots throughout the state. If one small group could do so, then any number of such small groups could likewise file nominations for one or more elective positions, thereby entailing an enormous cost for the printing and distribution of ballots, although representing an insignificant portion of the electorate of the state. Where the line was to be drawn was for the legislature to determine. We cannot escape the conclusion that the candidates of a new party must comply with the provisions of section 25-205.

It follows that as the plaintiffs have failed to comply with the provisions of section 25-205 of the primary election law, they are not entitled to the relief prayed for, and the writ must be denied. It is so ordered.