**STATE ex MIHLBAUGH, Plaintiff, v. BOGART et, Defendants.**

Ohio Appeals, Third District, Allen County.

No. 851.   Decided July 17, 1943.

Melvin C. Light, Lima, and Willis S. Siferd, Lima, for plaintiff.
Paul T. Landis, Lima, and John H. Davison, Lima, for defendants.

## OPINION

By GUERNSEY, P. J.

This is an action in prohibition brought by the State of Ohio on relation of Edward P. Mihlbaugh, plaintiff, against Mel Bogart, Clarence E. Mumaugh, Francis W. Durbin and James Jacobs, as members of the Board of Elections of Allen county, Ohio, defendants, to prohibit the defendants from printing on the ballot for the primary election to be held in the city of Lima, Ohio, on August 10, 1943, the names of any persons whose nominating petitions were filed with said defendants after July 1, 1943, and from holding said primary election in said city for any offices other than those of councilman of the Third Ward and councilman of the Fifth Ward.

This cause was submitted to this court upon the petition of the plaintiff, the answer and amendment to answer thereto of the defendants, and a statement of facts agreed to by all the parties.

In the answer of the defendants, the following facts pleaded in plaintiff's petition are admitted to be true:

The defendants are the duly appointed, qualified and acting members of and constitute the Board of Elections of Allen county, Ohio.

The city of Lima is a municipal corporation of the state of Ohio, having a charter which was adopted as alleged in plaintiff's petition, and that Sections 3, 4, 5, 6, 8, 9 and 10 of said charter of the city of Lima, Ohio, are in the words and figures set forth in plaintiff's petition.

Section 4785-67, GC, provides that primaries in the years, except presidential years, shall be held on the second Tuesday in August next preceding a general election. The year 1943 is not a presidential year and the second Tuesday in August, 1943, falls on August 10, 1943.

Section 3 of said charter provides as follows:

"A general election for the choice of elective officers provided for in this Charter shall be held on the first Tuesday after the first Monday in November in odd numbered years. Elections so held shall be known as regular municipal elections. Such other elections may be held as may be required by law, or provided for in this Charter."

Section 4 of said charter provides as follows:

"Candidates for all offices to be voted for at any municipal election under the provisions of this Charter shall be nominated at a non-partisan primary election to be held at the time provided by the general election laws of the State. Any matters which by the terms of the Charter may be submitted to the electors of the City at any

special election may be submitted at a primary election or at a regular election."

Section 5 of said charter provides as follows:

"The name of any elector of the city shall be printed upon the ballot, when a petition in the form hereinafter prescribed shall have been filed in his behalf with the election authorities. Such petition shall be signed by at least two hundred (200) electors of the city, if for the nomination of a candidate for an office filled by election from the city at large, and by at least fifty (50) electors of the ward if for the nomination of a candidate for an office to be filled by election from a ward."

Section 6 of said charter provides as follows:

"The signatures to a nominating petition need not all be appended to one paper, but to each separate paper there shall be attached an affidavit of the circulator thereof stating that each signature appended thereto was made in his presence and he believes it is the genuine signature of the person whose name it purports to be. Each signer of a petition shall sign his name in ink or indelible pencil, and shall place on the petition after his name his place of residence by street and number, or other description sufficient to identify the place, and give the date when his signature was made."

Section 8 of said charter provides as follows:

"All separate papers comprising a nominating petition shall be assembled and filed with the election authorities as one instrument at least forty days prior to the day of the primary election. Within ten days after the filing of a nominating petition the election authorities shall notify the person named therein as a candidate whether the petition is found to be signed by the required number of qualified electors. If insufficient, the person named therein may amend said petition by filing, within five (5) days after notification of insufficiency by the election authorities, additional petition papers. Within five (5) days after the filing of the additional petition papers, the election authorities shall notify the person named therein as candidate whether the amended petition is found to be signed by the required number of qualified eelctors."

Section 9 of said charter provides as follows:

"Any eligible person placed in nomination as hereinbefore provided shall have his name printed on the ballots, if, within five days after the notification provided for in the preceding section, he shall have filed with the election authorities a written acceptance of the nomination."

Section 10 of the charter provides as follows:

"The number of candidates for any office at any regular municipal election, in the city at large or in each ward, as the case may be, shall be the two candidates on the primary election ballot receiving the highest number of votes at the primary election. In case there shall not be for any office more than two persons who shall have filed petitions as provided for in this Charter, then said persons shall be the candidates at the regular municipal election and the primary for the particular office shall not be held."

"The name of each person who is nominated in compliance herewith shall be printed on the official ballot at the general election, and the names of no other candidates shall be printed thereon."

The material facts, shown by the agreed statement of facts, are as follows:

That, prior to July 1, 1943, on June 21, 1943, relator filed with the Board of Elections of Allen county, Ohio, a nominating petition for the office of mayor of the city of Lima, Ohio.

On June 30, 1943, the Board of Elections of Allen county, Ohio, notified relator that his nominating petition had been found to be sufficient and valid. On July 1, 1943, relator filed with the Board of Elections of Allen county, Ohio, his written acceptance of the nomination.

No other candidate for the office of mayor of the city of Lima, Ohio, filed with the Board of Elections of Allen county, Ohio, a nominating petition on or before July 1, 1943. On July 2, 1943, five candidates for the office of mayor of the city of Lima, Ohio, filed their nominating petitions with the Board of Elections of Allen county, Ohio.

On July 3, 1943, relator filed with said Board of Elections of Allen county, Ohio, an objection and protest against the acceptance of any nominating petitions filed after midnight on the day of July 1, 1943, and against the including on the primary ballot of any names of persons whose nominating petitions were filed after said time.

On July 6, 1943, the Board of Elections passed the following at a special meeting:

"Motion by Mr. Mumaugh, seconded by Mr. Durbin, that the protest signed by Edward P. Mihlbaugh, received July 3, 1943, be received and filed."

Signatured,—"4 yea votes."

Defendants have announced their intention to, and will unless prohibited by this court print on said ballots for the primary election to be held on August 10, 1943, the names of the persons whose

nominating petitions were filed on July 2, 1943.

The municipal offices of the city of Lima, Ohio, to be filled by election during the year 1943, are as follows:

Mayor; Councilman at Large; Councilman for the First Ward; Councilman for the Second Ward; Councilman for the Third Ward; Councilman for the Fourth Ward; Councilman for the Fifth Ward; Councilman for the Sixth Ward; City Solicitor; Municipal Judge; Clerk of the Municipal Court.

For only two of these offices, to-wit, Councilman for the First Ward, and Councilman for the Fifth Ward, had more than two persons filed nominating petition papers on or before July 1, 1943.

There are seven precincts in the First Ward; there are nine precincts in the Fifth Ward; there are sixty-three precincts in all the wards of the city of Lima, Ohio.

Defendants have announced their intention to, and will unless prohibited by this court, conduct a primary election in all of the precincts in the city of Lima, Ohio, and will expend public moneys therefor.

That there is to be nominated and elected during the year 1943, a Judge of the Municipal Court of the city of Lima, Ohio.

The city of Lima is a political sub-division as defined by §4785-3, ¶q, GC.

The Board of Elections of Allen county, Ohio, closed its office at its usual closing time at five o'clock P. M., Eastern War Time, on July 1, 1943. Said board opened its office at nine o'clock A. M., Eastern War Time, and kept the same open until 7:30 o'clock P. M., Eastern War Time, on July 2, 1943, and received nominating petition papers on July 2, 1943, for municipal offices of the city of Lima Ohio.

No nominating petitions were filed on July 2, 1943, before eleven o'clock A. M. Eastern War Time.

The Board of Elections of Allen county, Ohio, on June 21, 1943, at a regular session thereof, by unanimous agreement of all members of said board, determined that the date, July 2, 1943, until seven-thirty o'clock P. M., Eastern War Time, was the last day on which nominating petitions for municipal offices of the city of Lima could be filed with said board, and thereafter advised prospective candidates who applied for nominating petitions, and who thereafter filed said petitions with said board, and also advised the newspaper reporters, and others, that July 2, 1943, was the last day for filing said nominating petition papers.

That said date of July 2, 1943, was announced through the newspapers, and by the members of said board, as the last day for filing said nominating petitions.

That the minutes of the meeting of said board on June 21 1943, on this subject, read as follows:

"The Clerk was ordered to notify all printers that the Board of Elections would meet at 6:30 P. M. on July 2, 1943, for the

purpose of receiving bids on printing the ballots for the primary election.

"There being no further business, the Board adjourned until July 2, 1943, at 6:30 P. M., at their office, for the purpose of receiving and filing nominating petitions of the candidates of the city of Lima, and for receiving and opening the bids for the printing of the ballots."

Said board thereafter held a special session on July 2, 1943, a special session on July 6, 1943, and a special session on July 9, 1943; and on said date, July 9, 1943, the minutes of said board recite the following:

"The minutes of June 21, 1943, July 2, 1943, and July 6, 1943 meetings, were read and approved."

It is the general contention of plaintiff that the provision of Section 8 of the Charter of the city of Lima, that, "All separate papers comprising a nominating petition shall be assembled and filed with the election authorities as one instrument at least forty days prior to the primary election" is mandatory and that under this provision the last day in which the Board of Elections was authorized to file nominating petitions for the primary election to be held August 10th, was July 1st, and consequently that the filing of the nominating petitions of the various candidates mentioned in plaintiff's petition, on July 2nd was wholly without authority in law and therefore insufficient to warrant the Board of Elections in printing the names of the candidates provided for by such petitions, on the ballots as candidates for office at the primary election to be held August 10, 1943. And upon the assumption that this general contention is correct, the plaintiff further contends that under the provisions of the charter of the city of Lima it is unnecessary to hold a primary election in said city for any offices other than those of Councilman of the First Ward and Councilman of the Fifth Ward, for which there are more than three qualified candidates, and that the expenditure of public funds for the holding of such primary election for offices other than the two offices mentioned, would constitute an illegal expenditure of such fund.

The same rules of law applicable to the construction of statutes are applicable to the construction of municipal charters. It has been held that where a statute requires that an act be performed a fixed number of days previous to a specified date. the last day should be excluded and the first day included in making the computation. **State, ex Jones, v. Board of Deputy State Supervisors and Inspectors of Elections, 93 Oh St 14.**

Applying this rule to the charter provision as to the filing of the nominating petitions. it is apparent that July 1. 1943. was the last day on which nominating petitions for the primary election to be

held August 10, 1943, could be filed in conformity with such provision.

As the nominating petitions of candidates whose names are sought to be excluded from the ballot were all filed on July 2, 1943, subsequent to the last day for such filing prescribed by the charter, it is necessary to determine whether such provision is mandatory, and, if mandatory, the effect of such failure to comply therewith.

In a case involving the filing of a party nomination certificate with the Board of Elections after the expiration of the time prescribed by statute, it was held:

"Where it appears that such certificate has been filed in ample time in which to advertise for bids and print the ballots, and no objection is made otherwise, except as to the precise time in which it was done, and that the non-observance in this regard could not affect the result of the election, its fairness or honesty, such certificate so filed will be deemed to be filed in time, notwithstanding the requirement of the statute is mandatory in form." **State ex Fulton, v. Deputy State Supervisors of Elections of Licking County, 17 Ohio Circuit Court Reports, p. 396.**

The case mentioned is the only case in Ohio directly in point, but is contrary to the great weight of authority of cases involving similar statutory provisions in states other than Ohio. 72 A. L. R. 290, 296.

However, the same general result has been reached in decisions in other jurisdictions, some of which are based on the same general reasoning, and others on additional reasoning.

In the case of Manning et v. Young et, Supreme Court of Wisconsin (1933) 247 N. W. 61, involving the filing of primary nomination papers on a day subsequent to the expiration of the period prescribed by statute, when the last day of such period fell on a holiday, the court, basing its decision on the same general reasoning adopted in the case last mentioned, granted a writ of mandamus ordering the names of the petitioners placed upon the ballot, laying down the following rules which we approve as applicable to the facts in the case at bar, to-wit:

1. Laws relating to primaries and elections do not confer right of qualified persons to become candidates, but merely regulate exercise of such right in orderly way.

2. Laws regulating electors' rights are merely directory, while those prescribing qualifications or conditions are mainly imperative.

3. Narrow or strict construction of statute fixing time for filing primary nomination papers must be avoided.

4. Statutory regulation of franchise right must be so construed as to insure, rather than defeat, exercise thereof, when and where possible.

In the three cases hereafter mentioned, the decisions are based on similar reasoning, plus the reasoning that although the statutory provisions fixing the dates in which nominating petitions may be filed, are mandatory, yet there may be legal excuses for non-compliance therewith.

In the case of People ex Simmons v. Ham, (1907), 106 N. Y. Supplement, 312, it was held that the delivery of a nomination certificate to an official unauthorized to file the same, in reliance upon the statement of such official that it was his duty to file the same, constituted a legal excuse for the failure to file such certificate in the time prescribed by statute with the proper official, and the court ordered that the nominee's name be placed on the ballot.

In the case of In re Bayne, (1910) 127 N. Y. Supplement, 915, it was held that the designation of an incorrect date on an election calendar as the final day for filing constituted a legal excuse for not filing a nomination certificate within the time prescribed by a mandatory statute, and motion was granted ordering the name of the candidate placed on the ballot.

In the case of State ex Ashton v. Harris et, (1934) Supreme Court of Florida, 155 Southern Reporter, p. 100, it is indicated that sudden illness, accident, mailing in time to reach filing officer in ample time before the last day expires, and the like, may constitute legal excuse for not filing within the time prescribed by statute.

These cases simply represent an application to mandatory provisions of election laws, of the doctrine of legal excuse for non-compliance with statutory, charter or ordinance provisions, which the courts of this state have frequently applied to common law, ordinance and statutory regulations designed for the safety of the public, and we approve the doctrine of legal excuse for non-compliance as being applicable to the provision of the charter of the city of Lima, above mentioned.

Applying the last rule approved by us, to the facts of the instant case, in the light of the general rule first approved by us, that statutory regulation of franchise right must be so construed as to insure, rather than defeat, exercise thereof when and where possible, it is obvious that in this case there are two different states of facts arising from a mistake of the board of elections, charged with the duty of filing nominating petitions, as to the computation of time for filing such petitions under the provisions of the city charter, which constitute legal excuses for failure to file the nominating petitions within the time prescribed by the charter, to-wit:

1. The determination by the board, that the date of July 2, 1943, was the last day upon which nominating petitions for municipal officers of the city of Lima could be filed with said board, the advice given by the board to prospective candidates who applied for nominating peti-

tions which were thereafter filed with said board, and to newspaper reporters, and others, that July 2, 1943, was the last day for filing said nominating petitions, and the announcement through the newspapers and by members of said board of the date of July 2, 1943, as the last day for filing such nominating petitions.

2. As the charter does not prescribe any hour of the day as the time before which nominating petitions should be filed, such petitions might be filed at any time during the last day prescribed for filing up to midnight of that day. The closing by the board of elections of its offices at five o'clock P. M. Eastern Standard Time, on July 1, 1943, precluded candidates from exercising their right under the charter provision, to file nominating petitions on said date from the hour at which said office was closed until midnight of said day, and had the legal effect of permitting the exercise of the right to file on the following day.

The faliure to file the nominating petitions within the time prescribed by the charter being legally excused as above mentioned, the filing of the petitions at the time they were filed, was lawful and valid, and the defendants are required by law to print the names of the candidates nominated thereby, on the ballot for the August Primary and to hold a primary election for the offices for which they are candidates.

For the reasons mentioned, the temporary restraining order heretofore issued herein will be dissolved, and the petition of the plaintiff will be dismissed at his costs.

JACKSON and MIDDLETON, JJ., concur.