CLEGG v. BENNION, Secretary of State et al.

No. 7892.  Decided August 22, 1952.  (247 P. 2d 614.)

See 29 C. J. S., Elections, sec. 113. Mandatory character of statutory provision as to time of filing candidate's application. 18 Am. Jur., Elections, sec. 130; 72 A. L. R. 290.

*Gustin, Richards & Mattsson, Fred H. Evans,* Salt Lake City, for plaintiff.

*Clinton D. Vernon,* Atty. Gen., for defendants.

PER CURIAM.

Petition for extraordinary writ to place Rue L. Clegg's name on the 2nd Congressional Republican primary ballot instead of that of Don Mack Dalton, who was certified as the successful candidate by the Secretary of the Republican Convention and by the Secretary of State.

The Republican State Committee designated the Congressional convention date to follow *immediately after* adjournment of the Republican *State* convention, set for August 1. Dalton filed his declaration of candidacy on July 12th, 19 days before. Our statute[1] and the ∎

[1]Title 25-3-64, U. C. A. 1943. "At least 20 days before the date set for each primary convention * * * all persons intending to become candidates * * * shall file * * * with the Secretary of State * * * a declaration of candidacy".

authorities construing it require that 20 full days intervene between the convention and the filing dates.[2] Clegg contends that Dalton was ineligible since he was one day late. We concede that our statute is mandatory. Also, Dalton may have been one day late, but the question remains whether on the facts of this case, because of legal excuse or otherwise, he is or is not the nominee.

Clegg relies entirely on decision of this court, the deadline feature of which is involved herein and is typified by *Anderson* v. *Cook,* where filing 15 minutes after a statutory 5 p. m. deadline was held to be too late. At first blush, that case might seem controlling, but its examination shows a factual setting quite different than that here, which makes it not controlling. Therein an individual prospective candidate tried to file late, unassured by anyone and without publicity to the effect that he could do so. He had not been voted for at a convention and had no certification from anyone. It was simply a contest between him and the filing officer, without other adversary, in a setting lacking either a convention or an uncertain convention call.

Although the proceedings are directed at Dalton alone, many other declarants are involved who filed on the same day and relied, like Dalton, on the assurance of Heber Bennion, Jr., Secretary of State, proper filing officer, that a July 12 filing would be timely. Each had an opponent or opponents, none of whom, except Clegg, contested. There were 19 full days during which a test could have been effected before names were placed before the convention, —whose credentials committee, chairman and delegates accepted as fully qualified, those who filed on July 12. Mr. Bennion not only assured these men that a July 12 filing was timely, but told the press as much. Such assurance was given state-wide publicity more than once in daily and weekly papers. Dalton, on oath, asserted that his only

---

[2] *Anderson* v. *Cook,* 102 Utah 265, 130 P. 2d 278, 143 A. L. R. 987; *Wood* v. *Cowan,* 68 Utah 388, 250 P. 979.

sources of information were the Secretary of State and the newspapers, and it seems not unreasonable that he should inquire of the officer with whom he must file his declaration. Dalton officially was certified by the convention secretary as is required.[3] The Secretary of State accepted the certification without question, and in turn certified Dalton to the county clerks, as is required.[4] Dalton, the others and their supporters campaigned for 19 days before and 13 days after the convention without objection from any quarter. No adversary took issue even at the convention itself, and the declarants and their supporters must have expended considerable time, effort and money during the intervening period, believing the while that they were the duly qualified nominees.

Without deciding whether the filing was or was not timely, we point out that the call issued by the Republican state committee for the Congressional convention was not entirely free from ambiguity. It might be subject to some doubt, since that convention was to commence immediately following the adjournment of the *State* convention, which was set for August 1. If the Secretary of State, who necessarily must learn the convention date by hearsay, there being no provision for notifying him of such fact, had read the call, he no doubt would have sensed uncertainty therein. It appears that party officials themselves did not expect the Congressional convention to commence prior to Aug. 2, since Mr. Kesler, Republican chairman, in a separate letter to party officials stated that "the *State* primary nominating convention will be held * * * on Aug. 1 and Aug. 2", necessarily negativing the idea that the Congressional convention was set for Aug. 1, if it were to follow adjournment of the State convention. Such letter does not affect the wording of the official call, but it is mentioned as one of several confusing circumstances that may have induced the declarants the more to seek out and rely on

[3]L. Utah 1947, Chap. 35, Sec. 9.
[4]Ibid.

the pronouncements of Mr. Bennion that July 12 was a timely filing date.

Under the foregoing circumstances, can it be said that declarants should lose the endorsement of duly elected delegates voting for them at an official party convention? Should these delegates and the thousands they represent when their proportionate representation is projected into the election, be disfranchised, absent fraud, and where everyone involved apparently acted in good faith? We think not,[5] particularly in light of our election law which seeks liberality of interpretation against disfranchisement, saying that

"This act shall be construed liberally so as to insure full opportunity to become candidates and for voters to express their choice."[6]

Although our conclusion is in accord with the letter and spirit of that section, it is not predicated alone thereon, but in addition is based on other and independent grounds.

Aside from questions raised as to sufficiency of pleading and misjoinder of parties, we feel that Mr. Clegg comes to us too late. Matters of import as great as this require airing at the earliest opportunity and at a time when anticipated error may be prevented of occurrence.[7] In this case any question of ineligibility or disqualification existed, if at all, on July 12, 19 days before the convention to which the declarants' names were to be presented. During that period the matter could have been litigated. Seeking relief 13 days after the convention had met, accepted and nominated the declarants, impresses us as not being within that reasonable time contemplated in equity in such cases. It would seem rather to provoke an unfair assurance that third place losing candidates have two shafts to their bow, while disfranchising delegates to

[5]*Howell* v. *Bain*, 176 Or. 187, 156 P. 2d 576.
[6]25-3-9, U. C. A. 1943.
[7]*Howell* v. *Bain*, supra.

party conventions which traditionally have enjoyed an autonomy usually unreviewable by the courts.[8]

We hold under the facts of this case that defendant Dalton was legally excused from filing the day before he did so. The authorities almost without exception sustain our position in similar instances.[9] The tone of those decisions echoes in the strikingly similar *Mihlbaugh* ■ case, where, under a statute like ours, a declarant was excused from filing on time because, among other things, the Board of Elections had announced that a certain date (too late) would be a timely filing date, which announcement was given wide publicity in the·press, and the late filers relied thereon.

If an error was committed by the Secretary of State in representing that July 12 was the deadline, followed by widespread publicity, the record nevertheless indicates that he and those relying on him acted in good faith. There is no evidence that filing on July 12 injured anyone as a practical matter. Any mistake made, the good faith existing, failure to contest before or at the convention or for 13 days thereafter, widespread dissemination of the July 12 deadline, the nominations at the convention and the votes cast there for the declarants, their accepted qualification by the delegates, and the convention officials, the certification by convention officials and by the Secretary of State, and uncertain convention call, all done in good faith, naturally calls for application of principles of equity, which, in cases akin to this, customarily result in relief from honest mistake.

We are convinced that this case, factually quite unlike the *Anderson* case, is a proper case to recognize the will

---

[8]18 Am. Jur. 267.

[9]*Mihlbaugh* v. *Bogart*, 73 Ohio App. 47, 53 N. E. 2d 75; *In re Bayne*, 69 Misc. 579, 127 N. Y. S. 915; *Huse* v. *Haden*, 349 Mo. 982, 163 S. W. 2d 946; *People* v. *Ham*, 56 Misc. 112, 106 N. Y. S. 312; *State* v. *Harris*, 115 Fla. 3, 155 So. 100; contra, *State* v. *Marsh*, 120 Neb. 287, 232 N. W. 99, 72 A. L. R. 285.

of the delegates who voted for the declarants, the will of the convention itself, and the will of the voters generally. Their expressed wishes should not be regarded lightly particularly where honest error, unquestioned good faith and good faith filings have been effected in an atmosphere of all-around misunderstanding.

We appreciate the efforts of the parties, their counsel and those who appeared amicus curiae, in rendering capable and diligent assistance to the court resulting in an early decision.

The write is denied.