**UTAH STATE DEMOCRATIC COMMITTEE, Michael T. Miller, Chairman, and Henry A. Huish, Plaintiffs and Appellants,**

v.

**David S. MONSON, Lieutenant Governor of the State of Utah, Defendant and Respondent.**

No. 18518.

Supreme Court of Utah.

July 9, 1982.

---

Scott Daniels, Salt Lake City, for plaintiffs and appellants.

David L. Wilkinson, Atty. Gen. and Sharon Peacock, Asst. Atty. Gen., Salt Lake City, for defendant and respondent.

PER CURIAM:

This is an appeal from the denial of a petition filed by Michael T. Miller, Chairman of the Utah State Democratic Committee, and Henry A. Huish seeking an order directing David S. Monson, Lieutenant Governor of the State of Utah, (respondent) to accept a Declaration of Candidacy from Henry A. Huish as a candidate for the nomination of the Democratic Party for the office of Representative from the Third Congressional District of Utah. The petition was filed and the hearing thereon was held in the trial court pursuant to § 20–1–11, U.C.A.1953.

As early as March 1, 1982, Henry A. Huish made publicly known his intention to seek the nomination of the Democratic Party for the office of Representative from the newly created Third Congressional District in this state. He formally announced his candidacy in the news media in Utah. He met with party leaders, elected officials, community leaders and others to discuss his candidacy. He conferred with other Democratic candidates in strategy sessions. He spoke at meetings as a candidate. He received contributions, made expenditures and appointed campaign staff and an advertising agency to assist him. He filed a Statement of Candidacy and a Statement of Organization with the Federal Election Commission pursuant to federal law and supplied a copy thereof to the respondent. However, due to a misunderstanding between him and his campaign staff, he failed to file a Declaration of Candidacy with the respondent as required by § 20–4–9, U.C.A.

1953 prior to the filing deadline of April 26, 1982, and he failed to pay any filing fee. He was out of the state on that date and first learned of his oversight at 12:30 A.M. on the following morning, April 27. He returned to the state that day and attempted to file with the respondent and to pay the filing fee, but the respondent refused to accept his filing and payment. He promptly retained an attorney and brought this proceeding.

Section 20–4–9 provides that any person who fails to file a Declaration of Candidacy within the time provided shall be ineligible for nomination to office. Huish contends, however, that although the filing deadline is mandatory, *Anderson v. Cook,* 102 Utah 265, 130 P.2d 278, 143 A.L.R. 987 (1942), the court has equitable power to allow a candidate under proper circumstances to file a late Declaration of Candidacy. He relies upon statements made by this Court in its opinion in *Clegg v. Bennion,* 122 Utah 188, 247 P.2d 614 (1952), although he concedes that the facts of that case are quite different from the instant case. Huish asserts that he at all times acted in good faith, that his misunderstanding as to the necessity for filing with the respondent was only slight and not gross negligence, that upon learning of the oversight he took the first available airplane back to the state and attempted to file the next day, 21 hours after the deadline. He argues that he will suffer substantial detriment if he is not allowed to file late, that the status of no other person changed during the 21 hours that he was late and hence no one will be prejudiced by allowing his late filing and that since no other candidate filed for the office in his political party, the Utah Democratic Party will be without any candidate if his late filing is not accepted.

■ We believe that the facts of this case are so materially different from *Clegg v. Bennion,* supra, that no basis exists here to extend Huish the equitable relief which he seeks. In *Clegg v. Bennion,* the Secretary of State, who was the filing officer, had publicly published the wrong deadline date. The candidate, not knowing of the error of the Secretary of State, filed one day late. The filing was accepted and in reliance thereon the candidate campaigned for 19 days before a party convention at which he was selected, and then continued to campaign another 13 days after the close of the convention before the error was discovered. In contrast, Huish was never told by anyone that the filing deadline was other than April 26, 1982; during the statutory filing period (between March 25, 1982 and April 26, 1982) he had not been ill, had suffered no accident and had been in Salt Lake City, where the respondent's office is located, several times. Since the responsibility for the error must lie solely with him and his campaign staff, no basis exists for the invocation of the equitable principles applied in *Clegg v. Bennion.*

■ Huish next contends that the Statement of Candidacy which he filed with the Federal Election Commission, and a copy thereof with the respondent, constitutes a substantial compliance with § 20–4–9 requiring the filing of a Declaration of Candidacy. He refers us to the wording of that statute which states that the Declaration of Candidacy shall be in form "substantially" as there outlined. The Federal Election Campaign Act requires candidates for Congress to file a Statement of Candidacy with the Federal Election Commission, and to mail a copy of the completed form to the state filing officer. This was done on or about April 2, 1982. Huish points out that the two forms call for common information in several instances, viz., name of candidate, party affiliation, the office he seeks, his address and his phone number. He admits that the Declaration of Candidacy form also requires further information which is not required by the federal form; but, he asserts that much of this information is for the benefit of the political party and should be allowed to be waived by the party if it cares to do so. While certain affirmations required of the candidate might arguably be classified as for the benefit of the political party, there remain other requirements not met by Huish which cannot be so classified. As pointed out by the trial judge in

his well-considered memorandum decision, § 20–4–9 requires the filing officer, before accepting any candidacy, to "read to the candidate the constitutional and statutory requirements for candidacy", and obtain a statement from the candidate that he does in fact fulfill those requirements. "If the candidate indicates that such candidate does not qualify, the filing officer shall decline such person's candidacy." Contrary to the argument made by Huish, this affirmation is a requirement of filing. Without it the filing is not complete and the filing cannot be accepted by the filing officer.

Further, it is required by § 20–4–9 that the candidate take an oath that he "will not knowingly violate any election law or any law defining and prohibiting corrupt and fraudulent practice in campaigns and election in the state, and that . . . [he] will qualify for said office if elected thereto." This oath must be signed by the candidate before an officer qualified to administer oaths. This is an important requirement which the legislature saw fit to impose to protect the election process, but with which Huish did not comply. While the federal Statement of Candidacy was signed by Huish and he certified that the information contained therein was true, it required no oath of Huish nor even an affirmation of him that he would not violate the election laws and that he will qualify for his office if elected. It should be further observed, as pointed out by the trial judge, that our state election laws do not mention any federal form such as the Statement of Candidacy and it therefore cannot be assumed that the legislature ever intended such a document to take the place of the Declaration of Candidacy required by § 20–4–9. We therefore hold that the federal Statement of Candidacy form filed by Huish was not "substantially" the same as the Declaration of Candidacy required by § 20–4–9.

Lastly, Huish points out that § 20–1–15 and § 20–3–3 are legislative expressions that election laws shall be liberally construed to insure persons "full opportunity" to become candidates and for voters to express their choice. Those expressions, however, avail us nothing because there is nothing to construe where there is no ambiguity in a statute. *State v. Archuletta,* Utah, 526 P.2d 911 (1974); *H__ L__ v. Matheson,* Utah, 604 P.2d 907 (1979). Were we to grant Huish the relief he seeks, we would have to ignore the most important step mandated by the legislature to become a candidate, viz., the timely filing of a Declaration of Candidacy. To allow Huish to become a candidate under these circumstances would be to go far beyond a liberal construction of the statutes; and, as the trial judge pointed out in his memorandum, we would have to disregard the legislative mandate fixing the manner in which candidates for political office must proceed under the law. Huish had "full opportunity" to become a candidate—274 other candidates in this state were able to comply with the law and filed their Declarations of Candidacy timely.

The judgment below is affirmed. No costs are awarded.

OAKS, J., does not participate herein.

FISHLER, District Judge, sat.